Louisville, etc., Railroad Company v. Renicker.

---

LOUISVILLE, NEW ALBANY AND CHICAGO RAILROAD
COMPANY v. RENICKER.

[No. 2195. Filed May 26, 1897.]

PRACTICE.—*Special Verdict.—Motion for Judgment On.*—A motion by
defendant for judgment on a special verdict will be considered as
having been refiled, where defendant moved for a reduction of the
damages awarded plaintiff while the former motion was pending,
and the court treated it as still pending and ruled thereon without
the withdrawal of the motion to reduce the damages.

SAME.—*Verdict.— Error in Assessment of Damages.— New Trial.—
Statutory Construction.*—The only way the amount of damages
named in the verdict of a jury can be questioned, where the action
is upon a contract, or for the injury or retention of property, is by a
motion for a new trial, assigning the fifth statutory cause as provided
in section 568, Burns' R. S. 1894 (559, R. S. 1881).

DAMAGES.—*When Not Excessive.*—A verdict for $400.00 against a rail-
way company for carrying a young and inexperienced girl beyond
her station to a point where she could not safely alight, and then
instead of returning to such station as promised, carrying her half a
mile beyond another station, at which the conductor also promised
to stop, is not, as a matter of law, excessive.

From the Jasper Circuit Court. *Affirmed.*

*E. C. Field, W. S. Kinnan, Walter B. Olds* and *W.
B. Austin,* for appellant.

*Simon P. Thompson,* for appellee.

COMSTOCK, J.—This case was reversed in this court
in 1893, and is reported in 8 Ind. App. 404. Subse-
quently, an amended complaint was filed in the lower
court, and the cause put at issue by a general denial.
The theory of the amended complaint is that the ap-
pellee was injured by reason of the violation of the
implied contract made by appellant to safely carry
her to her destination, and permit her to alight there.
There was a trial by jury, a special verdict, and assess-

ment in favor of appellee for four hundred dollars, and a judgment rendered for that amount.

The only errors assigned, urged by appellant, are numbered three, four and five, and are upon the following grounds: (3) Error in overruling appellant's motion for judgment in its favor on the special verdict; (4) Error in overruling motion to change and modify the judgment; (5) Error in overruling appellant's motion to modify the judgment in this, to reduce the amount of recovery to fifty dollars, for the reason that there are no facts found in the verdict authorizing any judgment for a larger sum, and for the reason that on the facts found in said special verdict, the amount for which said judgment is entered is improper.

January 20, 1896, the jury returned the special verdict, on which verdict appellant moved for judgment in its favor. On January 24, 1896, while said motion was still pending, appellant moved the court for a reduction of the damages awarded plaintiff from four hundred dollars, to fifty dollars. March 26, 1896, appellant withdrew its motion for a reduction of the amount of damages awarded appellee. March 31, appellant's motion for a judgment on the verdict was overruled and it refiled its motion for a reduction of the amount awarded to fifty dollars. April 1, 1896, appellee moved the court for judgment in her favor on the special verdict, which motion was sustained and appellant excepted. Appellant then moved the court to reduce the amount of recovery in said judgment to fifty dollars, for the reason that there were no facts found in the special verdict authorizing any judgment for a larger sum, and that on the facts of said special verdict the amount for which said judgment is entered is an improper judgment. Appellee contends that the filing of the motion to reduce the

amount of recovery while the motion before filed for a judgment on the verdict was undisposed of, amounted to a waiver of that motion, because the two motions are inconsistent, and that as, after the withdrawal of the motion for the reduction aforesaid, the motion for judgment was not refiled, it is not to be considered on appeal.

We think the more reasonable view to take is, that inasmuch as the court treated it as still pending in the case, and ruled upon it without the withdrawal of the second motion, that it should be considered as having been refiled.

Appellant's motion to reduce the amount of damages does not fall within the fourth or fifth errors assigned, for they refer to the overruling of the motion to modify the judgment subsequently rendered. Appellee insists that the overruling of the motion to modify the judgment assigned as the fourth and fifth errors, is not available, claiming that the only way that the amount of the damages named in the verdict of a jury can be questioned is by a motion for a new trial, assigning the fifth cause in actions on contract, and assigning its overruling as error.

Elliott on Appellate Procedure, section 855, says: "A party cannot attack the assessment of damages unless he assigns as a cause for a new trial the specific reason that the amount awarded is erroneous."

Section 856: "The rule in this state is that in order to question the amount of damages assessed in actions * * * *ex contractu,* the fifth statutory cause must be specified."

Said fifth cause reads as follows (section 559, R. S. 1881): "Error in the assessment of the amount of recovery, whether too large or too small, where the action is upon a contract or for the injury or retention of property."

There being no motion for a new trial, appellant did not pursue the only method prescribed of saving the questions raised by the fourth and fifth assignments.

The third assignment, then, only remains for our determination. This assignment challenges (1) the sufficiency of the special verdict to uphold any judgment in favor of appellee; (2) the sufficiency of the special verdict to uphold the judgment for the amount rendered.

It appears from the special verdict that the appellant was a corporation owning and operating a railway extending from Delphi to Fair Oaks, Indiana, and was a common carrier of passengers. It owned depots and platforms at Delphi, Rensselaer and Surray, which were safe and convenient for travelers to enter and depart. Its trains ran daily and were scheduled to stop at Rensselaer. It had authority at Delphi to issue tickets to Rensselaer. The appellee bought a ticket at Delphi for Rensselaer and paid for the same $1.15.

She was young and inexperienced, traveling alone, and carrying a satchel weighing 25 pounds. She expected to meet her parents at Rensselaer, at which place they were that day, with a conveyance. Her parents resided eight miles from Rensselaer and seven miles from Surray. She had friends at Rensselaer with whom she expected to stay and await an opportunity to reach home. She gave up her ticket. The car did not stop at Rensselaer, but ran about one thousand feet beyond, and stopped where the appellee could not safely alight. When the car stopped she left her seat and walked to the platform of the car for the purpose of alighting therefrom. The servants of defendant promised to return the train to the platform. Appellee believed this and at the request of ap-

Louisville, etc., Railroad Company *v.* Renicker.

pellant's servants, went back into the car, but the train started for Chicago and did not return to Rensselear. They promised to stop at Surray. After the train had proceeded a mile or two, plaintiff was asked to elect between getting off at the station of Surray, or Fair Oaks, stations next north of Rensselaer, and she would be given a return check from Fair Oaks, at which station she would be required to wait six hours for a train passing her back to Rensselaer on the next south bound train, and the plaintiff decided to get off at Surray, the next station north of Rensselaer. This was the next station on the railway to her home, where it was her purpose to go in making this journey. That her brother resided on a farm about one mile from Surray, and after purchasing her ticket at Delphi she desired and requested the agent to sell her a ticket to Surray, was advised by the agent that the train was not scheduled to stop there; whereupon she purchased her ticket for Rensselaer. The train was not stopped at Surray, and not until it had run by the station about a quarter of a mile. There the train stopped and the plaintiff walked to the platform and the conductor got off the car and assisted her to alight. She alighted from the second step from the bottom, but why she did not alight from the last step of the car there is no evidence to show. When she alighted it was 5 o'clock a. m., but was broad daylight; she knew her brother lived near Surray, and was well acquainted with the country in that vicinity. The ground upon which she alighted was smooth, inclining at a grade of one foot in three feet from the end of the ties to a ditch about six feet distant. The walk over the distance of this quarter of a mile to the station was level and smooth. The step down to the ground from the second step of the car was from three to four feet. She was slightly assisted by the brake-

man and alighted upon her feet and did not fall or strike anything. She immediately afterward walked to the residence of the station agent, one-half mile distant, carrying her valise. There she left her valise and walked directly to the house of one Kenton, a distance of half a mile, and from there she walked to the residence of her brother. She walked without limping, or in any manner indicating that she had received any injury. She made no complaint of any injury to the agent at Surray with whom she talked, nor to Mr. Kenton, nor his wife, with whom she visited, and she did not consult any physician until July 14, and not until after she had employed an attorney to prosecute her case; and the only purpose of such employment was to qualify the physician as a witness in this case. There is no finding that appellee received physical injury.

The amended complaint was evidently drafted with a view of coming within the ruling of *Evansville, etc., R. R. Co.* v. *Kyte*, 6 Ind App. 52. The judgment on the special verdict can only be upheld on the theory of breach of contract with aggravating circumstances. The damages resulting, were caused by reason of the violation of a contract, which violation was attended with anxiety of mind and disappointment, and physical inconvenience and discomfort to appellee. The violation of the contract does not seem to have been accompanied by any extenuating circumstances. Appellant concedes, by its last motion, that it was at fault.

Under all the circumstances the jury found four hundred dollars to be a reasonable compensation, and the trial court who presided held that the finding was justified. We cannot say that the amount was excessive.

Judgment affirmed.

WILEY, C. J., took no part.