INDIANAPOLIS REAL ESTATE BOARD *v.* WILLSON ET AL.

[No. 14,580.   Filed November 6, 1933.   Rehearing denied January 11, 1934.]

*John A. Royse* and *George W. Eggleston*, for appellant.

*Durvin Fitzpatrick, Edward V. Fitzpatrick, Romney L. Willson,* and *Russell Willson,* for appellees.

Kime, C. J.—This is an appeal from the court's judgment in a suit brought by appellees, partners, against appellant for balance due appellees on an express oral contract between appellant and appellees, under the terms of which contract appellee, Romney L. Willson, was to render, to appellant, legal services in respect to persuading the Attorney-General of the State of Indiana to write an opinion, to the State Tax Board, to the effect that its attempt to tax real estate contracts, known as "leases with option to purchase," was illegal. Appellant, through Donald E. Rider, its executive secretary, promised to pay appellees $1200.00 for such

services, in the event they were successful in having the action of said tax board rescinded by that method. The appellees, pursuant to the terms of said contract, filed with the Attorney-General, after preliminary investigation as to the matters involved and procedure, their brief in support of their contention as to the illegality of said tax. Thereupon the Attorney-General wrote an opinion declaring said tax illegal and upon suits brought by appellees, in the name of the various owners of said contracts, the State Tax Board rescinded its action and thus appellee's part of the contract was fully performed.

Part of the fee of $1200.00 was paid by contributions of parties interested in having the tax board rescind its action. Appellees demanded from appellant payment of the balance of said fee and since the same was not forthcoming suit was brought by appellee for the unpaid balance of said fee. The complaint, minus the caption, reads as follows:

"First Paragraph: Plaintiffs complain of defendants and each of them and say that each plaintiff is a resident of Indianapolis, Marion County, Indiana, engaged in the business of practicing law in a co-partnership under the firm style of Willson & Willson.

"That defendant The Indianapolis Real Estate Board is a corporation organized under the laws of Indiana with its chief place of business in Indianapolis, Marion County, Indiana, and is organized for the purpose, among other things, of advancing the interest of investors who hold real estate or real estate securities for income and to improve conditions under which real estate business is carried on, and that defendant Donald E. Rider is a resident of Indianapolis, Marion County, Indiana, and the Executive Secretary of said Indianapolis Real Estate Board was on all dates herein mentioned.

"That on or about the —— day of December, 1928, the exact date being unknown to plaintiffs, the State Board of Tax Commissioners for the State of Indiana had signified its intention to place upon the tax duplicates of Marion County, Indiana, for taxation a large number of contracts owned by various persons, firms and corporations engaged in the purchase and sale of real estate and contracts affecting the purchase and sale of real estate in Marion County, Indiana, known as leases with option to purchase real estate contracts. That on or about said date defendants requested plaintiffs to give defendants an opinion as to whether said contracts were properly subject to taxation in Indiana, and plaintiffs gave their opinion to defendants orally that said contracts were not properly subject to taxation and that any attempt to tax them would be invalid.

"That plaintiffs and defendants then and there entered into an oral contract whereby defendants employed plaintiffs to investigate said matter further, including the form of action that would be proper to contest the validity of such taxation when and if said State Tax Board taxed such contracts, and to institute whatever legal proceedings plaintiffs thought necessary and proper to contest said tax. That plaintiffs accepted said employment and agreed to carry out the terms of the contract on their part to be performed.

"That pursuant thereto plaintiffs investigated the law relative to the validity of such proposed tax and the form of action best calculated to oppose the same, and prepared to institute legal proceedings to contest said tax when said State Tax Board should order the Auditor of Marion County to place such contracts on the tax duplicates and to tax the same.

"That thereafter and on or about the —— day of December, 1928, said State Tax Board did order the Auditor of Marion County to place said contracts on the tax dupli-

cates of Marion County and the Treasurer of Marion County to collect the tax thereon. That thereafter, and on or about the ———day of April, 1929, plaintiffs suggested· to defendants that the State Tax Board might rescind its action in taxing said contracts if the· Attorney General of Indiana would give said Board an opinion that such contracts were not taxable and that the matter should be taken up with said Attorney General to that end. That thereupon defendants instructed plaintiffs to do whatever was necessary to present the matter to said Attorney General and to persuade him that said contracts were not taxable and that the action that the State Board has taken relative thereto was invalid and then and there agreed to pay plaintiffs a fee of Twelve Hundred Dollars ($1200.00), if they should be successful in having the State Tax Board rescind said action by that method.

"That twelve hundred dollars ($1200.00) was a reasonable fee for said services.

"That pursuant to said instructions plaintiffs prepared a brief on said question and presented the same to the Attorney General and conferred with him and said State Tax Board relative thereto. That as a result of said brief and conference the Attorney General gave the State Tax Board his opinion that said contracts were not taxable and that as a result thereof, the State Tax Board rescinded its action in taxing the same.

"That thereafter and pursuant to said contract of employment plaintiffs prepared and filed petitions for a large number of persons, firms and corporations, who had been taxed on such real estate contracts, filed the same with said State Tax Board, which Board as a result thereof ordered the contracts of said persons, firms and corporations removed from the tax duplicates of Marion County.

"Plaintiffs performed all the covenants of said con-

tract on their part to be performed but defendants have failed to perform said contract in that only seven hundred eighty-five dollars· ($785.00) has been paid upon said Twelve Hundred Dollar ($1200.00) fee, although plaintiffs have demanded payment of the whole amount, to wit: Twelve Hundred Dollars ($1200.00). That there is now due and owing plaintiffs the sum of four hundred fifteen dollars ($415.00). That there has been a long and unreasonable delay in the payment of said amount, and plaintiff is entitled to interest thereon at the rate of six per cent (6%) per annum since May 1, 1929.

"WHEREFORE, plaintiffs pray judgment against defendants and each·of them in the sum of Six Hundred Dollars ($600.00) and costs." ·

Second Paragraph: (The first three grammatical paragraphs of this paragraph of complaint are identical with the first three grammatical paragraphs of the first paragraph of this complaint, then is the following:)

"That plaintiffs then and there entered into an oral contract with defendant Donald E. Rider, and defendant Indianapolis · Real Estate Board acting through Donald E. Rider, who was the Executive Secretary of said Board and in exclusive charge of its office and daily business and who assumed to be acting for said Board and who was acting within the scope of his authority, whereby defendants employed plaintiffs to investigate said matter further, including the form of action that would be proper to contest the validity of such taxation when and if said State Tax Board taxed said contracts and to institute whatever legal proceedings plaintiff thought necessary and proper to contest said tax. That plaintiffs believed that said Rider as Executive Secretary in making said contract on behalf of said defendant Board was acting within the scope of

his authority and because of said belief accepted said employment and agreed to carry out the terms of the contract on their part to be performed.

"That pursuant thereto plaintiffs investigated the law relative to the validity of such proposed tax and the form of action best calculated to oppose the same, and prepared to institute legal proceedings to contest said tax when said State Tax Board should order the Auditor of Marion County to place such contracts on the tax duplicates and to tax the same.

"That thereafter and on or about the —— day of December, 1928, said State Tax Board did order the Auditor of Marion County to place said contracts on the tax duplicates of Marion County and the Treasurer of Marion County to collect the tax thereon.

"That thereafter, and on or about the —— day of April, 1929, plaintiffs suggested to defendants that the State Tax Board might rescind its action in taxing said contracts if the Attorney General of Indiana would give said Board an opinion that such contracts were not taxable and that the matter should be taken up with said Attorney General to that end. That thereupon defendants instructed plaintiffs to do whatever was necessary to present the matter to said Attorney General and to persuade him that said contracts were not taxable and that the action that the State Board had taken relative thereto was invalid and then and there agreed to pay plaintiffs a fee of Twelve Hundred Dollars ($1200.00) if they should be successful in having the State Tax Board rescind said action by that method. That the supplemental agreement and instructions above described were made and given in behalf of defendant Board by said Rider as its Executive Secretary, assuming to act for it and within the scope of his authority, and plaintiffs believed he had as such Executive Secretary authority to bind said defendant Board in the matter.

"That twelve hundred dollars ($1200.00) was a reasonable fee for said services.

"That pursuant to said instructions plaintiffs prepared a brief on said question and presented the same to the Attorney General and conferred with him and said State Tax Board relative thereto. That as a result of said brief and conference the Attorney General gave the State Tax Board his opinion that said contracts were not taxable and that as a result thereof, the State Tax Board rescinded its action in taxing the same.

"That thereafter and pursuant to said contract of employment plaintiffs prepared and filed petitions for a large number of persons, firms and corporations who had been taxed on such real estate contracts, filed the same with said State Tax Board as a result thereof ordered the contracts of said persons, firms and corporations removed from the tax duplicates of Marion County.

"That thereafter, and on or about the 7th day of June plaintiffs made demand upon said Real Estate Board that it pay plaintiffs said fee and informed said Board that plaintiffs held it liable for the payment thereof.

"That said Board did not deny its liability for said fee but on the contrary, through Donald E. Rider, its Executive Secretary who was then and there acting within the scope of his authority, assured plaintiffs that it would be paid but that it wished to attempt to get a part or all of said fee contributed from persons who were interested and who had been benefited by the results of plaintiffs' services and that if such prospective contributors knew that plaintiffs had been paid in full said defendant Board would have difficulty in getting contributions, and defendant requested plaintiff for this reason not to press its claim for a reasonable time. Plaintiffs complied with such request and re-

frained from pressing said claim for a period of several weeks.

"That after several weeks had elapsed plaintiffs again demanded payment from defendant Board and said defendant requested further delay and assured plaintiffs that the fee would be paid but that it wished further time to ask for contributions from other individuals toward said fee. That said defendant Board stated to plaintiffs that it wished to collect as much as possible of the fee from other persons, firms and corporations interested and that the more it so collected the less it, defendant Board, would have to pay.

"That from time to time checks were received by plaintiffs from other persons, firms and corporations as contributions toward said fee, which payments were secured by defendants and instructed by them to be made to plaintiffs. That in each instance plaintiffs informed defendant and offered to send said checks to defendant but defendant requested plaintiffs to keep them and apply them toward said fee and plaintiffs did so.

"That on numerous occasions thereafter, during the year 1929, plaintiffs demanded payment of said fee from defendant Board but on each occasion were asked by said Board to be patient a little longer that they were attempting to collect said fee from outsiders, but that the fee would be paid in full.

"That defendant Board during all of said time knew that plaintiffs considered they had a binding contract of employment for such services with it and were relying on said Board's liability under said contract. That by the statement and course of conduct of said Board described above plaintiffs were induced to and did believe that said Board did not deny its liability, but on the contrary acquiesced in plaintiff's belief therein, and because of such belief and not otherwise plaintiffs

consented to and did wait for a period of eight months before bringing suit on said contract. That on or about the ——day of January, 1930, defendant Board notified plaintiffs that it was not liable to plaintiffs and denied that plaintiffs had any binding contract with it for the services above described. Plaintiffs say that by reason of said statements, conduct and acquiesence of said Board above described and plaintiffs reliance thereon as above described, said Board is estopped to deny the execution of the above described contract between it and plaintiffs or its liability thereunder. That plaintiffs have performed their part of said contract but defendants have failed to perform their part in that only seven hundred eighty-five dollars ($785.00) of said twelve hundred dollars ($1200.00) has been paid plaintiff, leaving a balance unpaid of four hundred fifteen dollars ($415.00).

"That there has been long and unreasonable delay in the payment thereof and plaintiffs are entitled to interest thereon from May 1, 1929.

"WHEREFORE, plaintiffs pray judgment against said defendants and each of them in the sum of Six Hundred Dollars ($600.00)."

The findings of fact, among other things, contain the following:

"7. That at its December, 1928 meeting the State Board of Tax Commissioners taxed a large number of Marion County Corporations on the leases with option to purchase owned by them and certified said action to the Auditor of Marion County, instructing him to put such assessments on the tax duplicates of Marion County. That said Willson *believed* that he had been employed to look after said matter and pursuant to said *belief* procured a list of all of said corporations and the amount of the assessment of each. . . .

"14. On June 7th, 1929, plaintiffs had had no pay-

ment on their fee. When plaintiffs performed the services above described and on June 7th, 1929, plaintiffs *believed* it had been employed by defendant Real Estate Board to perform said services and performed such services relying on such belief. . . .

"15. On June 7th, 1929, plaintiffs wrote defendant Real Estate Board and in said letter called attention to the fact that said fee of $1200.00 was unpaid and stated that plaintiffs would appreciate it if defendant Board would send its check for the amount. That said letter was received by said defendant Board by said Rider as its Executive Secretary and said Rider knew from said letter that plaintiffs *believed* that defendant Real Estate Board was liable for their fee. . . .

"24. When plaintiffs performed said services and wrote their letter of June 7th, 1929, to defendant Real Estate Board demanding payment of their fee from said Board they *believed* that they had been employed to perform the services described above, by said defendant Real Estate Board and that said Board was liable for their fee.

"25. That the answer to plaintiff's letter of June 7th, signed by said Rider as executive secretary of defendant Board contained no denial of said Board's liability, and that fact and the statement that plaintiffs would be advised later relative to their fee and the subsequent letters sent to said Board by plaintiffs and the failure of defendant Board in response thereto to deny its liability and statements made to plaintiff by said Rider as Executive Secretary of defendant Board on various occasions subsequent to June 7th, when plaintiffs asked him concerning their fee, *induced plaintiffs to believe* that the defendant Real Estate Board acquiesced in its liability to plaintiffs and did not deny or intend to deny such liability and because of that belief plaintiffs waited for a period of seven months and until they were first

notified that defendant Real Estate Board denied liability in January, 1930, before taking any steps to press their claim by legal proceedings. (Our italics.)

"28. That the services performed by plaintiffs were of the reasonable value of $1200.00 on which plaintiffs have been paid the sum of $785.00 and that there is due plaintiffs from defendant Indianapolis Real Estate Board the sum of $415.00 and that plaintiffs are entitled to interest on said sum since January 1st, 1930, at the rate of 6% per annum or $31.90 making a total of $446.90."

A motion for new trial was filed by appellant which was overruled, hence this appeal, assigning as error this action and also that the court erred in each of its conclusions of law. Under the results that must be reached here it will not be necessary to discuss any possible error in the conclusions of law.

Appellant contends that the complaint sounds in special contract while appellees contend that it sounds in *quantum meruit*. The complaint on its face sustains appellant's contention.

The record discloses that appellees proceeded to establish their cause on the theory of *quantum meruit* and that the court adopted that theory in its finding of facts.

Before proceeding further a distinction between implied and express oral contracts seems necessary. The intention of the parties, in an express oral contract, is evidenced by words. The intention of the parties, in an implied contract, is evidenced by acts, circumstances, and implications. The intent of the parties in the case at bar were definite and expressed, to wit: Upon appellee, Romney L. Willson, performing legal services for appellant, to the end that the Attorney-General would direct an opinion to the State Tax Board that the intended tax on leases with

option to purchase was invalid and, in turn, the tax board would rescind its action on petitions filed on behalf of parties interested in having said tax board rescind its action, that appellant would pay appellees $1200.00. There was a definite job to be done by appellees in consideration of a definite fee to be paid by appellant. Appellees fully carried out their part of the contract and only a portion of their fee had been paid. Suit was brought on the contract for the balance of the fee. The complaint clearly indicates that there was an unpaid balance on the $1200.00 due. The theory of the complaint then was express contract and such theory should have been followed to make the recovery good.

It is an established rule of law that there can be no recovery on an implied contract where an express contract is declared.[1] And that a recovery will be upheld only when the evidence and the facts found support the case made by the complaint.[2]

We quote with approval from the case of Southern Ind. Gas. and Electric Co. v. Winstead (1931), 92 Ind. App. 329, 175 N. E. 281, decided by this court in 1931: "That a complaint must proceed on some definite theory, which must be adhered to throughout the trial and upon appeal is so thoroughly settled that the citation of authorities is unnecessary."

Appellees insist that the allegation to wit: "$1200.00 was a reasonable fee for such services" makes the theory of the complaint quantum meruit. This is not true. It has been frequently held that the theory of a pleading must be determined, by the court, from its general scope and tenor and not

Note 1. Davis v. Chase, 159 Ind. 242, 64 N. E. 88; Sanders v. Hartge, 17 Ind. App. 243, 46 N. E. 604.

Note 2. Armcost, Admr., v. Lindley, Admr., 116 Ind. 295, 19 N. E. 138; Bremmerman v. Jennings, 101 Ind. 253; Brown v. Will, 103 Ind. 71, 2 N. E. 283.

from fragmentary statements and conclusions or detached parts.[3]

The evidence given by the appellees in the trial of the case should sustain the cause of action and verdict upon the theory of the complaint, and we quote from the case of *Louisville N. A. & C. Ry. Co.* v. *Renicker*,[4] in which the court so aptly said:

"It is not sufficient to say that the evidence is sufficient to entitle the appellee to recover upon some theory; but the question is, does it entitle her to recover upon the theory of the issues? The evidence must establish the case made by the complaint, and, if there is no evidence to sustain the cause of action upon the theory of the complaint, the verdict is contrary to law. As said by the court in *Bosseker* y. *Cramer, supra,* 'We think a verdict which is contrary to law is one which is contrary to the principles of law as applies to the facts which the jury were called upon to try—contrary to the principles of law which should govern the cause.' *Machine Works* v. *Chandler* (1877), 56 Ind. 575. In the case of *Boardman* v. *Griffin* (1875), 52 Ind. 101, the court said: *'When the trial of a cause is by the Court,* instead of a jury, whether the court is required to find the facts specially or not, it *cannot, any more than a jury, go outside of the case made by the pleadings.* In such case, as well as in others, the parties must recover upon the allegations of the pleadings. They must recover *secundum alegata probata,* or not at all. It must be so, in the nature of things, so long as our mode of administering justice prevails. *It would be folly to require the plaintiff to state his cause of action, and the defendant to disclose his grounds of defense, if on the*

---

Note 3. *Oolitic Stone Co.* v. *Ridge*, 169 Ind. 639, 83 N. E. 246; *Monnett* v. *Turpie*, 132 Ind. 482, 32 N. E. 328; *State ex rel. White* v. *Scott*, 171 Ind. 349, 86 N. E. 409.

Note 4. *Louisville N. A. & C. Ry. Co.* v. *Renicker*, 8 Ind. App. 404, 35 N. E. 1047.

*trial, either or both might abandon such grounds and recover upon others, which are substantially different from those alleged.' "* (Our italics.)

There is a total failure to find that there was a special contract and the appellees admit there was no evidence which would have sustained such a finding. It is clear from the above that the recovery of the appellees was not had upon the theory of express contract declared by the complaint, but rather upon the theory of *quantum meruit* adopted by the appellees in the trial of the cause, therefore, such recovery cannot be upheld by this court and a new trial should be had.

Judgment reversed with instructions to sustain appellant's motion for a new trial.