## MICHEL *v.* FORDE.

[No. 19,654. Filed June 26, 1963. Rehearing denied July 26, 1963. Transfer denied November 19, 1963.]

*Harry L. Gause, Howard J. DeTrude, Jr.,* and *Armstrong, Gause, Hudson & Kightlinger,* of counsel, all of Indianapolis, for appellant.

*Earl C. Townsend, Jr., John F. Townsend, Townsend & Townsend,* of Indianapolis, and *Richard L. Lagrange,* of Franklin, for appellee.

MOTE, C. J.—This appeal comes to us from the John-

son Circuit Court from a judgment rendered on a jury verdict. The issues were formed by a third amended complaint for personal injuries growing out of an automobile collision with a building, and an answer in five paragraphs, under Rule 1-3.

Omitting the formal part, the complaint alleged:

"Comes now the plaintiff and for her cause of action alleges and says:

1. That at all times mentioned herein New York Street was a paved public highway laid out in an east and west direction in Indianapolis, Marion County, Indiana.

2. That at all times mentioned herein Sherman Drive was a paved public highway laid out in a north and south direction, intersecting said New York Street substantially at right angles at a point within Indianapolis, Marion County, Indiana.

3. That on or about April 22, 1958, defendant employed plaintiff to sit with defendant in defendant's husband's 1956 Plymouth automobile while same was being driven by defendant.

4. That defendant paid plaintiff the sum of Five Dollars ($5.00) per hour for said employment.

5. That on said date at about 9:45 A.M. defendant operated said 1956 Plymouth automobile with plaintiff sitting in the front seat thereof in a southerly direction along said Sherman Drive and up to its intersection with New York Street.

6. That at said time and place plaintiff was an employee of defendant acting within the course of her employment in that she was sitting in the car driven by defendant for the purpose of instilling confidence in defendant in her driving.

7. That plaintiff was not assisting defendant in the operation of the said car.

8. That when defendant arrived at said intersection defendant carelessly and negligently drove said automobile off the highway and directly into the property located at 3816 East New York Street.

9. That at said time and place defendant was careless and negligent in the operation of the vehicle which she was driving in the following respects, to-wit:

A. Failed to drive on the highway and in fact drove off of the highway, across the sidewalk and into a house.

B. Failed to keep her vehicle under control in that she accelerated the vehicle instead of applying the brakes when attempting to make a turn at said intersection.

C. Failed to turn her vehicle along the public highway in attempting to negotiate a turn at New York Street and Sherman Drive.

D. Drove at a speed that was high and unreasonable considering the fact that she was attempting to make a turn at an intersection, to-wit: thirty (30) miles per hour.

10. That as a result of said collision plaintiff was injured in the following respects, to-wit:

. . .

14. That all of said injuries and damages to plaintiff were proximately caused by the carelessness and negligence of the defendant as alleged in Rhetorical Paragraph 9 hereof.

15. That plaintiff has been damaged thereby in the sum of One Hundred Thousand Dollars ($100,000.00).

WHEREFORE, plaintiff asks for a jury trial and that she be awarded verdict and judgment against the defendant in the sum of One Hundred Thousand Dollars ($100,000.00), costs, and all other proper relief in the premises."

The first paragraph of answer was an admission and denial; the second alleged contributory negligence; the third, assumed risk; the fourth, joint control of the vehicle in a joint venture; and the fifth, as follows:

"Comes now the defendant, and for her fifth paragraph of answer, alleges and says:

That at the time of the collision referred to in plaintiff's complaint the plaintiff was an employee of one Edward Forler, doing business as Indiana Driving School, and at all times referred to in plaintiff's complaint was acting for and on behalf of said school and within the scope of her employment with the said school.

That the defendant had contracted with the said Indiana Driving School to furnish her driving instructions and the plaintiff was at all times, and at the time of the collision referred to in plaintiff's complaint working for the said driving school, an employee thereof, and was instructing the defendant for and on behalf of said driving school and as its employee.

That the plaintiff, as such employee, on or about October 30th, 1958 and prior thereto, was bound by and accepted the provisions of the Workmens Compensation Act of the State of Indiana, and having received the benefits of said Workmens Compensation Act and compensation thereunder for the injuries referred to in plaintiff's complaint is precluded from recovering in this action against this defendant.

That plaintiff's claim for compensation was and is her exclusive remedy.

WHEREFORE, defendant prays that the plaintiff take nothing by her complaint and for all other proper relief in the premises."

Upon rendition of judgment for appellee, plaintiff below, on the verdict of the jury, appellant filed a motion for new trial which was overruled. The errors assigned in this court, and relied upon for reversal, include sustaining of the motion to strike out said paragraph of answer to the third amended complaint, and the overruling of the motion for new trial.

Appellee has questioned the sufficiency of appellant's brief but a careful study thereof leads us to conclude

that there has been a good faith effort and substantial compliance with the rules of our Supreme Court as to its preparation; and we are able fully to understand the issues and points raised therein. *Guthrie* v. *Blakely et al.* (1956), 127 Ind. App. 119, 130 N. E. 2d 62, 131 N. E. 2d 357.

As revealed by the briefs, the significant facts disclose that appellee was a regular employee of Indiana Driving School and, as such, she was assigned to teach appellant how to drive, for which the said school was paid at the rate of five ($5.00) dollars per hour. After several one and two hours of lessons, appellant passed the examination and there was issued to her a driver's license; however, appellant continued to have a feeling of insecurity and lack of capability properly to drive, and particularly, her husband's automobile which had no driver trainer controls, and the employment was continued for further and additional instructions on April 21, 1958, and on April 22, 1958. This automobile was equipped with a standard, conventional transmission.

On April 22, 1958, when appellee was giving appellant a lesson, or was "riding with her pupil," appellant drove east on 38th Street in the city of Indianapolis, thence south on Sherman Drive to the intersection with East New York Street, where she stopped to wait for traffic to clear that she might turn left to drive along East New York Street. It appears that appellant permitted the automobile which she then was driving to go too far to the south before she negotiated the turn.

In order to present the evidence concerning the collision itself and how it occurred, as well as to disclose the dominance of appellee, as an instructor, over ap-

pellant, this statement extracted from appellant's brief, as testified to by appellee, follows:

" . . . *I* suggested that in going south we turn on New York Street. *We* were going to a Shell filling station . . . We were going to the Shell station because that is the kind of gas we use in the company car. *We* might have passed a Shell station between 38th and New York, but when I saw that her car was running hot that was the closest one. . . . *We* had no place in mind when we started south on Sherman. In plenty of time *I* decided to turn left before we got to New York Street. *I* can't say when *I* decided to turn left on New York Street. When *we* got into the intersection . . . She must have shifted into second in the intersection. *I* am not sure I told her to shift into second. *I* don't remember whether I did or not. After one or two or all of them went by she started to make her left turn. . . . she was overshot or was too near the south curb. When she started to pull into New York Street out of the intersection she was not to the parked car lane but just about to it. I mean the lane next to the curb on the south side of New York Street. . . . The right rear wheel of the car came in contact with the curb in reference to the intersection. It went over the curb at the corner of the intersection. I guess right at the corner. It went over the corner where it was rounded. When it went over the curb the car was right at the corner of the intersection. The front wheels did not go over the curb. . . . When the right rear wheel came over the curb the car was headed northeasterly. The car went past the intersection and came cata-cornered across. Not completely past the intersection but to the far side and then back. When *I* touched the wheel there was no car directly in front of us. *I* was helping her turn the corner. There was a car getting gas there in the gas station that we would have been headed for probably, or . . . There were cars parked there on New York Street. . . . That car was parked just beyond the gas station. A couple of car lengths perhaps east of the gas station. There are many feet in front of the gas

station, for driving. Before *I* turned the wheel the rear end went over the curb. The car was heading in a northeasterly direction, not before I turned the wheel. Before I turned the wheel the car was headed towards the one in the gas station, it was headed southeasterly. When *I* grabbed the wheel we were perhaps eight to ten feet from the curb. The curb was south of the front end of the car. The car heading southeasterly, heading right towards the curb. Before *I* grabbed the wheel the car was north of the curb. It was headed southeast. We were eight to ten feet north of the curb. We were talking about the front end of the automobile, and it had not gone over the curb. At that time the car was going about two or three miles an hour. *I* did not know at that time that she was having trouble controlling the car. I didn't have any reason to believe that she was having trouble. *I grabbed the wheel and gave it a spin* because when she started to move she used gas and with that kind of gas and so little space she had to have help on the turn. She had already started to make the turn and I saw she wasn't going to make it when I grabbed the wheel and helped her. I saw that she wasn't going to make it. I knew then that she was in trouble. Her car was eight to ten feet from the curb when I knew she wasn't going to make it and was in trouble. That was when she started to accelerate. That is not when I put my foot on the brakes. . . . We were going southeast and were eight to ten feet from the curb when I gave the wheel a spin. We were going two or three miles an hour until she started to accelerate. I don't know how fast it was going when I gave the wheel a spin. Probably five to ten miles an hour. . . . In other words, this car that I am talking about was at a gas pump and, the gas pump was about a car length south of the sidewalk and, those gas pumps were between the two driveways in there. The driveway to go in is on the west and a driveway to come out on the east. The gas pumps were between these two driveways. When *I* grabbed the wheel and gave it a spin, *I* reached over and turned it all the way around. It was not power steering. I did not keep hold of it. After *I* gave

it a spin the car went around the corner. When I looked around we were going northeasterly. The car was headed east after *I* reached over and gave the wheel a spin, practically east. *I* spun it with my left hand. . . . I did not jerk the wheel from her hands. Her hands stayed on there even though I helped her. Now, it was headed east. It didn't start to go east. In other words if there had been no hands on the wheel whatsoever after the turn was made it would have gone down the last open lane, the farthest open lane next to the parked cars, it would have gone down that lane. On the south. Before the turn it was headed southeast. It would have taken part of the parked car lane. No, it didn't have to be headed northeast after *I* gave that a turn, if the wheel was released. After *I* gave it a spin it didn't necessarily have to be headed northeast. *I* did reach over and apply the brakes later. At the time I gave the wheel the spin she was stepping on the accelerator. She kept her foot on the accelerator from that time. When *I* gave it a spin I took my hands off it. When I released the wheel I did not know at that time that her foot was on the accelerator and the accelerator was down. I didn't realize there was no control over the car at that point. I reached for my sunglasses and started to put them on and I looked up and we were headed that way. *I* reached down for my sunglasses after *I* gave the wheel a spin. We had already run over the curb. My sunglasses were in my lap. I have trouble seeing without them. Just a glare, that is when the sun comes out. This was about 10:00 in the morning, we were headed northeast. The sun would have been in my eyes if we had headed east. . . ." (Our emphasis.)

Appellee has not questioned the accuracy of the testimony from which the above has been extracted and the same is undisputed, although appellee does supply in her brief certain omissions in appellant's Condensed Recital of the Evidence, which appear to have no bearing upon the decision at which we have arrived.

The theory of the complaint and the theory upon

which the action was tried was that appellee was an employee of appellant. Appellee was an employee of Indiana Driving School, assigned to teach appellant how to drive, and this relationship continued intermittently until and including the time of the collision and resulting injuries to appellee.

In *Indianapolis Real Estate Board* v. *Willson et al.* (1933), 98 Ind. App. 72, 187 N. E. 400, in reversing the trial court, this court quoted with approval from *Southern Indiana Gas and Electric Company* v. *Winstead* (1931), 92 Ind. App. 329, 175 N. E. 281, as follows:

> " 'That a complaint must proceed upon some definite theory, which must be adhered to throughout the trial and upon appeal is so thoroughly settled that the citation of authorities is unnecessary.' "

And in the *Willson* case, *supra*, this court said that "The evidence given by the appellees (as in this case) in the trial of the case should sustain the cause of action and verdict upon the theory of the complaint," and quoted from *Louisville N. A. & C. Ry. Co.* v. *Renicker* (1897), 17 Ind. App. 619, 47 N. E. 239, at page 85:

> " 'It is not sufficient to say that the evidence is sufficient to entitle appellee to recover upon some theory; but the question is, does it entitle her to recover upon the theory of the issues? The evidence must establish the case made by the complaint, and, if there is no evidence to sustain the cause of action upon the theory of the complaint, the verdict is contrary to law. As said by the court in *Bosseker* v. *Cramer, supra,* "We think a verdict which is contrary to law is one which is contrary to the principles of law as applies to the facts which the jury were called upon to try— contrary to the principles of law which should govern the cause." *Machine Works* v. *Chandler* (1877), 56 Ind. 575. In the case of *Boardman* v.

*Griffin* (1875), 52 Ind. 101, the court said: "*When the trial of a cause is by the Court,* instead of a jury, whether the court is required to find the facts specially or not, it *cannot, any more than a jury, go outside of the case made by the pleadings.* In such case, as well as in others, the parties must recover upon the allegations of the pleadings. They must recover *secundum alegata probata,* or not at all. It must be so, in the nature of things, so long as our mode of administering justice prevails. *It would be folly to require the plaintiff to state his cause of action, and the defendant to disclose his grounds of defense, if on the trial, either or both might abandon such grounds and recover upon others, which are substantially different from those alleged.'* " See also: *Discher et al.* v. *Klapp et al., etc.* (1954), 124 Ind. App. 563, 117 N. E. 2d 753.

In her brief, appellee makes the following assertion: "The theory of appellee's complaint simply is that appellee, for a consideration, was employed on the date of the accident by appellant through Edward Forler, doing business as Indiana Driving School, to ride in appellant's automobile, thus removing appellee from the status of a passive guest to which the Indiana Guest Act would apply, and instead making appellant liable to appellee for appellant's negligent acts. Appellee's theory was not that appellee was an 'employee' of appellant within the meaning of the Indiana Workmen's Compensation Act."

Appellee then argues that she is excepted from the provisions of the Act because she was but casually employed by appellant, citing Section 9 of the Workmen's Compensation Act, Sec. 40-1209, Burns' Indiana Statutes, Annotated, 1952 Replacement, in part, as follows:

"The act, except Section sixty-six (Sec. 40-1517), shall not apply to casual laborers as defined in clause (b) of Section seventy-three (Sec. 40-1701) . . . unless such employees shall give notice

in the manner provided in Section three (Sec. 40-1203) of their election to be so bound."

The pertinent part of clause (b) of said Section seventy-three (Sec. 40-1701) reads as follows:

"(b) The term 'employee,' as used in this act, shall be construed to include every person, . . . , in the service of another *under any contract of hire or apprenticeship,* written or implied, except one whose employment is both casual and not in the usual course of the trade, business, occupation or profession of the employer. . . . " (Emphasis supplied.)

It properly may be concluded from the language above quoted that "casual employees" may be exempted from the provisions of the Indiana Workmen's Compensation Act, but this does not in any wise imply or suggest that appellee was an employee, casual or otherwise, of appellant. The assertion in appellant's brief, above quoted, appears to us to be a most curious one, particularly since said statement is not followed by cogent reasons, argument and the citation of authorities in support thereof.

At no place in appellee's brief does she point to evidence or suggest and maintain that proper and appropriate inferences may be drawn from any evidence of a *contract of hire or apprenticeship* between appellant and appellee. On the other hand the evidence to which appellee points in her brief leads inescapably to the conclusion that appellant's only *contract of hire,* express or implied, was with Indiana Driving School, and that the only *contract of hire* which appellee had, as shown by the record, was with Indiana Driving School. As an employee of said school, appellee was engaged in the performance of her duties

under her *contract of hire* with said school at the time of the collision and her resulting injuries.

The authorities which appellee cites on the question of "casual employment" and her arguments as well, are predicated upon the employer-employee relationship already having been established; hence, they are not applicable. *Coffin et al.* v. *Hook* (1942), 112 Ind. App. 549, 45 N. E. 2d 369, 370; *Barker, Receiver* v. *Eddy et al.* (1933), 97 Ind. App. 94, 185 N. E. 878.

In *Rogers et al.* v. *Rogers et al.* (1919), 70 Ind. App. 659, 122 N. E. 778, at pages 668, 669, we find this expression:

> "The relation of employer and employe is contractual. Like any other contractual relation, it is a product of a meeting of the minds. *Western Union Tel. Co.* v. *Northcutt* (1909), 158 Ala. 539, 48 South. 553, 138 Am. St. 38; 18 R. C. L. 490. To create the relation of employer and employe there must be an express contract, or such acts as will show unequivocally that the parties recognize one another as master and servant. 18 R. C. L. 493. It is essential to the existence of every contract of employment that it be definite and certain. *Parson* v. *Trask* (1856), 7 Gray (Mass.) 473, 66 Dec. 502."

As stated in *McDowell et al.* v. *Duer* (1922), 78 Ind. App. 440, 444, 133 N. E. 839: "The relationship of employer and employe is contractual. It is created in every instance by a contract, express or implied." Appellant properly has saved the question above discussed by including the same in the motion for new trial which was overruled and by assignment of errors in this court. Since we find and hold that the verdict of the jury is contrary to law; that it is not sustained by sufficient evidence; that there was error in overruling appellant's motion for a directed verdict

both at the close of appellee's evidence and at the close of all the evidence, for the reason that said appellant, as a matter of law, did not sustain the burden of her third amended complaint by the introduction of competent, relevant evidence to prove employer-employee relationship between the parties. thus to sustain appellee's theory of the action it becomes unnecessary for us to consider the other errors relied upon for reversal.

Other errors asserted by appellant include assumption of risk in appellee's employment by Indiana Driving School; incurred risk in appellee's relationship to appellant; joint venture, contributory negligence and overruling appellant's fifth paragraph of answer, each of which may be well taken.

Judgment reversed.

Pfaff, Kelley, JJ., concur; Hunter, J., concurs with separate opinion.

### Concurring Opinion

Hunter, J.—I feel that the decision should be reversed on the theory of assumption of risk. Generally I agree with the following argument of appellant as stated in her brief:

"Appellee made her living by teaching inexperienced people how to drive, giving from ten to twelve lessons per day. Daily Appellee rode with unqualified, inexperienced drivers, constantly exposing herself to injury. Appellee was engaged in this occupation at the time she was injured.

A similar situation was present in *Richards* v. *Richards* (Ky. 1959), 324 S. W. 2d 400. In this case Plaintiff was teaching the Defendant how to drive. The Defendant had driven years before but was not familiar with modern automobiles equipped with conventional transmission. As the

Defendant was turning a corner the car started jerking and Plaintiff told Defendant to give it some gas. Defendant did this and the car shot across the street and struck a tree.

In reversing the verdict for Plaintiff, the Court said:

'Strictly speaking, assumption of risk applies to the relation of master and servant and is based on the doctrine Volenti non fit injuria (one who consents to a hazardous undertaking cannot recover for an injury). The term presumes some danger, a knowledge thereof, and ordinarily implies an appreciation of the danger and acquiescence therein. 7 C. J. S. Assumption of Risk P. 137. The doctrine applies where one may reasonably elect whether or not he shall expose himself to a particular danger. To invoke the doctrine, it is essential that the risk or danger shall have been known to, or appreciated by, Plaintiff. 65 C. J. S. Negligence, §174 pp. 848, 851.

'Some courts regard the assumption of risk and contributory negligence as interchangeable, but there is a distinction since assumption of risk is a mental state of willingness, while contributory negligence implies a failure of plaintiff to exercise due care. Also, assumed risk is based upon voluntary exposure to danger and is applicable only to cases where the injured person might reasonably elect whether or not he should expose himself to the danger. 38 Am. Jur. Negl. §173, p. 847. 'Allen knew his brother Edgar was without experience in operating a modern car. Thus, Allen assumed a risk when he got in the car with his brother and undertook to teach him to drive.

'It cannot be said this accident was caused by Edgar's negligence. It was obviously caused by his inexperience in the proper handling of the mechanical controls. An emergency was created when he pushed down on the accelerator 'too hard' and the automobile 'jumped across the road.' He then panicked and failed to use the means at his command to stop the car. This is exactly the situation a person must anticipate when he undertakes to

teach another how to drive. This is the risk he assumes.'

'In *LeFleur* v. *Vergilin* (1952), 288 App. Div. 1035, 117 N. Y. S. 2d 244, the Court states:
'We think that a plaintiff who has been licensed by the State of New York to operate a motor vehicle and who voluntarily accompanies a defendant, who has just received a learner's permit, in defendant's car for the purpose of teaching the defendant to drive, assumes the risk of the defendant's inexperience and may not recover damages for personal injuries caused by the lack of skill or in experience of the defendant and that it was error for the court to fail so to charge.'

'The doctrine of assumption of risk is also recognized in Indiana. In *Brazil Block Coal Co.* v. *Hoodlet* (1891), 129 Ind. 327 (330), 27 N. E. 741, the Court said:

'It is too plain for controversy that one who needlessly and recklessly exposes himself to open and obvious danger is guilty of negligence. If he thereby suffers injury, he is guilty of such negligence as will preclude a recovery against the person causing such injury.

'The law requires that men shall use the senses with which nature has endowed them, and when, without excuse, one fails to do so, and is injured in consequence, he alone must suffer the consequences. *Lake Shore, etc., R. W. Co.* v. *Pinchin,* 112 Ind. 592; *City of Plymouth* v. *Milner,* 117 Ind. 324.'

'Then again, at page 333, the Court said:

'Whether anything is said of the dangerous character of the employment, or of the defective and dangerous appliances or not, if the dangers and defects are of such character that they are equally known to or open to the observation of both employer and employee, it can well and justly be said that they stand on a common footing.'

'Hence, if there was an employee-employer relationship existing in the instant case, the doctrine of assumption of risk would apply and would defeat the Plaintiff's cause of action. If, however,

no employee-employer relationship existed in this case then the doctrine of incurred risk would apply. An excellent discussion of the principle is found in *Pittsburgh, etc., R. Co.* v. *Hoffman* (1914), 57 Ind. App. 431, 433-439, 107 N. E. 315. This Court said, among other pertinent observations:

'Where one voluntarily and knowingly places himself in a certain environment, or undertakes to use a certain instrumentality, and as a consequence received an injury, his right to recover therefor may be defeated by the doctrine of the assumption of risk, where the contractual relation exists, or by the doctrine of incurred risk where the relation is non-contractual, even though he may have exercised due care for his own safety in the midst of such environment or in the actual use of such instrumentality. In the midst of such environment or in the actual use of such instrumentality, he may have proceeded negligently or omitted to exercise care for his own safety, and if as a consequence he suffers an injury the principle of contributory negligence would defeat his right to recover therefor. When either of the first two principles defeats an action brought to recover for an injury, it is because of the situation that the person involved voluntarily and knowingly assumes. Contributory negligence defeats him by reason of careless conduct in a given situation. See *Davis Coal Co.* v. *Pollard, supra; Indiana, etc., Oil Co.* v. *O'Brien, supra; Town of Salem* v. *Walker, supra; Town of Gosport* v. *Evans, supra.*'

'In *Ridgway* v. *Yenny* (1944), 223 Ind. 16, 22, 57 N. E. 2d 581, our Supreme Court said:

'One who knows of a danger arising from the act or omission of another and understands the risk therefrom, and voluntarily exposes himself to it, is precluded from recovering for an injury which results from the exposure . . . The incurring of the risk must be really voluntary.'

'Further, it is clear that where there is no dispute in the evidence bearing on that question, as is the case here, it is for the Court to say as a matter of law that the Plaintiff assumed or incurred the risk.'

'*Pierce* v. *Clemens* (1942), 113 Ind. App. 65, 77,

46 N. E. 2d 836; *Hedgecock* v. *Orlosky* (1942), 220 Ind. 390, 395, 44 N. E. 2d 93; *Standard Oil Co. of Indiana* v. *Meissner* (1936), 102 Ind. App. 552, 556-557, 200 N. E. 445.

'In the instant case there is no dispute in the evidence bearing on the question of assumption of risk. The evidence clearly shows that the Appellant was an inexperienced and incompetent driver. There is no dispute but that Appellee was giving her a lesson as evidenced by the receipt given Appellant by Appellee. In fact, there is no dispute but that Appellee made her living by riding with inexperienced drivers teaching them how to drive. Justice and right demand that a person teaching inexperienced people how to drive should not be allowed damages for injuries arising because of this inexperience. As the Court stated in *Richards* v. *Richards* (Ky. 1959), 324 S. W. 2d 400, this is what Appellee assumed when she took this job.' "

Regardless of the question of whether the appellant had a valid operator's license the undisputed evidence shows that the appellee voluntarily entered this automobile with the appellant in an attempt to improve her driving and she was paid $5.00 per hour. Appellant's expressed reason for the lessons (as testified to by the appellee) was to gain confidence. This in and of itself points to the fact that appellee knew that appellant was lacking in some degree of being a competent driver. I feel that appellee as a matter of law, assumed the risk of any injury that resulted from this lack of competency.

NOTE.—Reported in 191 N. E. 2d 507.