## MOBLEY v. J. S. ROGERS COMPANY.

[No. 10,205.   Filed May 2, 1918.   Rehearing denied October 10, 1918.]

1. CONTRACTS.—*Construction.—Ambiguity.*—Where a contract is uncertain or ambiguous resort may be had to extraneous facts and circumstances, as well as to the practical construction given to the contract by the parties. p. 312.

2. CONTRACTS.—*Construction.—Extrinsic Evidence.—Questions of Law and Fact.*—Where extraneous facts and circumstances are resorted to for the purpose of explaining an ambiguous contract, the question of construction becomes one of mixed law and fact. p. 312.

3. MASTER AND SERVANT.—*Workmen's Compensation.—Findings of Industrial Board.—Construction of Contracts.*—Where the construction of a contract, upon which depended the relation of master and servant, was a mixed question of law and fact for the determination of the Industrial Board, the conclusion of the board, if supported by some evidence, is binding on appeal. p. 312.

4. EVIDENCE.—*Parol.—Extraneous Circumstances.—Contracts.*—In a proceeding under the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918), provisions in a contract, upon which depended the question whether the injured applicant was an employe, that the applicant was a subcontractor for construction of the stonework for a government building according to plans prepared by the supervising architect of the treasury department and under his direction, the defendant's only interest being to see that the work was done as planned and to pay the agreed price, was not so ambiguous as to warrant a resort to extraneous circumstances by the Industrial Board. p. 312.

5. MASTER AND SERVANT.—*Workmen's Compensation.—Employes and Subcontractors.*—Where a person, under the terms of a contract, was designated a subcontractor for the construction of

stonework for a government building, was to furnish his own tools, equipment and laborers, and was to be wholly independent of the general contractor, except that the latter and the architect were to see that proper results were accomplished, the relation created was that of subcontractor and contractor and not that of employer and employe; and this is true, though such person was injured while underdressing a stone according to marks made thereon by the superintendent of the original contractor, the pay for such work being fixed at a certain rate per hour, not as wages, but as the agreed price under the contract. p. 313.

From the Industrial Board.

Proceedings by Jacob A. Mobley, under the Workmen's Compensation Act against the J. S. Rogers Company. An award by one member of the board was reversed by the full board, and the applicant appeals. *Affirmed.*

*Charles E. Henderson* and *James L. Murray,* for appellant.

*L. K. Babcock* and *Forkner & Forkner,* for appellee.

IBACH, C. J.—Appellant, while engaged in cutting stone for use in the government post office building then being constructed at Newcastle, Indiana, received an injury, which resulted in the loss of the sight of one eye. He immediately made application for compensation under the Workmen's Compensation Act, Acts 1915 p. 392, §8020l *et seq.* Burns' Supp. 1918, and upon a hearing before one member of the Industrial Board was allowed compensation, but upon a review before the full board such award was reversed and compensation denied.

The controlling question presented by the appeal to this court is, Was appellant an employe of appellee, or was he an independent contractor or a sub-contractor? Unless he was an employe, no compensation can be recovered under the statute.

The evidence discloses that appellee was the general contractor for the construction of the government building referred to. Appellant was also a contractor, engaged in cutting and fitting stone in buildings of that nature, and had in his employ eight or more men, who were under his control and supervision, and were paid by him a wage agreed upon between themselves.

The agreement with appellee under which appellant was working when injured was in writing and is set out in full in the briefs. We have extracted the portions pertinent to the question confronting us. It begins:

"The Builders Uniform Subcontract * * * Paragraph 1. This agreement made the first day of May, 1916, between J. A. Mobley * * * parties of the first part hereafter designated the *subcontractor* and J. S. Rogers Co. * * * party of the second part, hereinafter designated the contractor."

Then follows:

"The subcontractor * * * agrees with the contractor as follows: Article 1. The subcontractor shall and will provide all labor and equipment for the erection of all limestone and granite used in the United States Post Office building in New Castle, Ind. * * *"

Article 2 provides that the work shall be done under the direction of the architect and in conformity to certain specified drawings and specifications. Article 4 reads:

"The subcontractor shall provide * * * facilities for inspection by the contractor * * *

and he shall remove after notice all materials condemned by the architect.''

Article 5 provides for the furnishing of a sufficient number of skilled workmen by the subcontractor, and, in case of default on his part in this regard, the contractor has the right to employ such labor, and all damages occasioned by such default shall be charged to the subcontractor; and in the subsequent paragraph it is provided that the subcontractor shall complete his work so as not to delay the building. Article 7 makes provision for the payment of damages to the subcontractor by the contractor, and by the subcontractor to the contractor, if any is occasioned by delay in furnishing material on the part of the one party and for delay in the prosecution of the work on the part of the other. Article 9 provides the sum to be paid by the contractor for said work and material shall be at the rate of ''22 cents per cubic foot measured in the building. * * * Patching and cutting made necessary by faults of others than the subcontractor to be paid for at the rate of 75 cents per hour * * * that such sums shall be paid by the contractor to the subcontractor in current funds as follows:'' Article 11 provides for the contractor taking out fire insurance as the building progresses to be paid to the parties as their interest may appear. There is a further provision to the effect that the subcontractor was to indemnify the contractor against all claims for damages arising from accident to persons or property occasioned by the subcontractor and his employes, and likewise a provision that the contractor was to indemnify the subcontractor against claims of like character occasioned by the contractor and its employes.

It appears also from the evidence that a certain stone was delivered from the quarry, which was not perfectly dressed, and before it could be used in the building it became necessary to "underdress" it. The cutting required was marked by appellee's superintendent. Appellant attempted to do this particular work of cutting the stone where marked, and, while so engaged, a piece of stone, or a particle from his chisel, flew off and struck his eye, injuring it.

While it is true, as contended by appellant, that, where a contract is uncertain or ambiguous in its terms, resort may be had to extraneous facts and circumstances, as well as the practical construction, if any, given to the contract by the parties in arriving at the true agreement, as a corollary to such rule, when such facts and circumstances are resorted to, they, together with the inferences to be drawn therefrom, must be considered in arriving at the true meaning of the contract, and its construction becomes a question of mixed law and the fact for the determination, in this case, by the Industrial Board, and its conclusion in the presence of some evidence is binding on this court. Acts 1915 p. 392, §61; *Kirkoff Bros.* v. *McCool* (1917), 64 Ind. App. 645, 116 N. E. 439. So that if this case involved a state of facts which required the application of this rule, we would be bound by the action of the Industrial Board.

As shown by the extracts from the contract above set out, there is no uncertainty in any of the terms and provisions of this contract affecting the relations of the parties. Appellant is therein designated as a *subcontractor*. He therein agreed to do the work he contracted to do according

to certain plans and specifications prepared by the *supervising architect of the treasury department* and under the direction of said architect, so that as to appellant's particular work appellee had nothing whatever to do, except to see that such work was done to the satisfaction of such architect, and to pay appellant the agreed price.

By the terms of his contract appellant was to furnish all his own tools and equipment, all necessary laborers, and was to act wholly independent of appellee in the performance of his contract. In fact, appellant was his own free agent, under the control of no one except the architect and original contractor, and then only to the extent that proper results were accomplished. The marking of the stone by the superintendent, to which fact appellant attributes much importance, was simply an indication where the cutting had to be done in order that that particular stone might conform to the specifications and fit in the proper place. The contract with reference to this particular kind of work provides that patching and cutting made necessary by the fault of others than the *subcontractor* was to be paid for at the rate of seventy-five cents per hour, clearly indicating that the contract was intended not only to cover the work of placing the stone in the building as the separate blocks were delivered on the premises ready to be set, but that, when it became necessary to redress or underdress any of them by reason of breakage or error, such work was also to be done by appellant, and the rate of compensation was fixed as above indicated, not as wages as an employe but as pay for the performance of work covered by the terms of the contract, the extent thereof depending

on the condition of each particular stone as it was about to be placed in position, and this work was as much a part of the contract as the work of setting the stone which were received ready to be set in the building without any alteration or change. *Indiana Iron Co.* v. *Cray* (1898), 19 Ind. App. 565, 581, 583, 48 N. E. 803.

The contention by appellant that the parties themselves placed a construction on the contract which must bind them now, and the authorities cited on the proposition that parties may mutually adopt a construction of a written contract which, when mutually acted upon, may become binding, has no application to the facts of this case, as the record is silent upon any acts or conduct on the part of appellee or any one authorized to act for it which warrants its application.

Award affirmed.

NOTE.—Reported in 119 N. E. 477. Workmen's compensation acts: employers, employes and employments to which the acts apply, L. R. A. 1916A 113, 245, 1917D 143.