## McDowell et al. v. Duer.

[No. 11,140.   Filed January 26, 1922.   Rehearing denied June 22, 1922.]

1.  MASTER AND· SERVANT.—*Workmen's Compensation.—Doctrine of Independent Contractor.*—The doctrine of "independent contractor" is peculiar to the law of negligence, and has no proper place in the law of workmen's compensation. p. 444.

2.  MASTER AND SERVANT.—*Creation of Relationship.*—The relation of employer and employe is contractual, and is in every instance created by contract express or implied. p. 444.

3.  MASTER AND SERVANT.— *Workmen's Compensation Act.— Questions of Fact.—Relationship of Master and Servant.*— Whether one rendering service for another is an employe or a contractor is a question of fact for the Industrial Board in a proceeding for compensation under the Workmen's Compensation Act (Acts 1915 p. 392, §8020l et seq. Burns' Supp. 1921). p. 445.

4.  MASTER AND SERVANT.—*Workmen's Compensation Act.—Findings.—Evidence.—Sufficiency.*—In a proceeding for compensation under the Workmen's Compensation Act (Acts 1915 p. 392, §8020l et seq. Burns' Supp. 1921), a finding that one agreeing to fell trees and cut them into logs at a stipulated price per thousand was an employe, and not a contractor, *held* warranted by the evidence. p. 445.

5.  MASTER AND SERVANT.—*Workmen's Compensation Act.—Employer's Report of Accident.— Admissions.— Conclusiveness.*— In a proceeding for compensation under the Workmen's Compensation Act (Acts 1915 p. 392, §8020l et seq. Burns' Supp. 1921) for the death of a servant, that the alleged employer, on making a report of the accident to the Industrial Board, regarded decedent as an employe, though not a conclusive admission, should be given its proper weight in determining the effect of the contract under which decedent was employed at the time of the injury. p. 446.

6. MASTER AND SERVANT.—*Workmen's Compensation Act.—Construction.—"Employe."*—In construing the legislative definition of "employe" in the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1921) a measure of liberality should be indulged to the end that in doubtful cases an injured workman or his dependents may not be deprived of the humane provisions of the compensation plan. p. 447.

From the Industrial Board of Indiana.

Proceedings for compensation under the Workmen's Compensation Act by Almeda Duer against Frank Mc-Dowell and others, doing business in the firm name of the Bluffton Hoop Company. From an award for applicant, the defendants appeal. *Affirmed.*

*Joseph W. Hutchinson, Everett W. Trook* and *Elmer E. Stevenson,* for appellants.
*Dore B. Erwin,* for appellee.

DAUSMAN, C. J.—The appellants are partners doing business in the firm name of Bluffton Hoop Company. One Charles Duer, while cutting timber for appellants, was injured by a falling tree, and died from the effects thereof a few days later; and this appeal is from an award of compensation to the appellee as his widow.

The undisputed facts, bearing on the controversy, are as follows:

The hoop company had a manufacturing plant at Decatur, Indiana. It had in its employ one Franks, whose business was to buy timber for the company and to employ men to cut and haul it. In February, 1920, Franks purchased some timber for the company in the community where Duer resided. Franks asked Duer if he could cut the timber, and Duer said he could. They agreed on the price to be paid for the cutting, viz.: $2.50 per thousand. The quantity of timber was about 10,000 feet. Franks gave Duer specifications, measurements and dimensions, and told him the length in

which he wanted the timber cut. Duer's regular business was farming and also contracting for the construction of ditches and cement work. Duer furnished his own tools for cutting timber, and he engaged his son to help him do that work. Franks had control over the work, as to how the timber should be cut, and authority to see that it was cut according to specifications. The company reported the accident to the Industrial Board before Duer died; and also made a report to the insurance carrier. The company, in its report to the Industrial Board, consistently and throughout the document referred to Duer as its employe. The company bought timber at various places. It usually had two regular cutters at each place. The company's plan was to have a regular set of cutters; but sometimes it would cut timber in localities where it was hard for its men to go; and in such cases, or in case of a small job, it would pick up some one locally. At times when the factory was shut down, the company would take men from the mill to the woods and have them cut. The company did not have any distinct understanding with any of its cutters that they were to do a certain amount of work or to do it in a certain way—only as to specifications, and not as to time.

The ultimate question to be determined is whether the Industrial Board was justified in finding that Duer was an employe. The appellant's contention is that Duer was not an employe, but that in truth he was an "independent contractor." In view of the evidence, it is certain that Duer was neither a trespasser nor a mere volunteer, and that he must have been either an employe or a contractor. It clearly appears from the Workmen's Compensation Act that the legislature has recognized the distinction between an employe and a contractor. §14 as amended, Acts 1919 p. 158, §8020x

Burns' Supp. 1921. The concepts denoted by the words "employe" and "contractor" are, therefore, so related that we will consider the contention in its dual aspect.

In order that we may intelligently pursue our inquiry we must have an accurate conception of the significance or import of the terms "employe" and "contractor."

The legislative definition of "employe" is "any person * * * in the service of another under contract of hire or apprenticeship, written [express] or implied."

The co-ordinate legislative definition of "employer" is "any individual, firm, association . or corporation * * * using the services of another for pay." Acts 1919 p. 158, §76, §8020h3 Burns' Supp. 1921.

In the definition of "employe" the words "in the service of another" are the equivalent of "working for another"; and in the definition of "employer" the word "service" is the equivalent of "labor."

The general meaning of the word "contractor" is shown by the following definition:

"One who contracts; one of the parties to a bargain; one who covenants to do something for another." Webster's Dictionary; Century Dictionary.

The specific meaning of the word "contractor" differs materially from its general meaning, as shown by the following definitions:

"Specifically, one who contracts to perform work on a rather large scale, at a certain price or rate, as in building houses or making a railroad." Webster's Dictionary.

"Specifically, one who contracts or covenants either with a government or other public body or with private parties, to furnish supplies, or to construct works or erect buildings, or to perform any work or service, at a certain price or rate: as, a paving-contractor; a labor-contractor." Century Dictionary.

The word "contractor" is sometimes used to denote a permanent occupation or business, as evidenced by the following:

"The term 'contractor' is applicable to all persons following a regular independent employment, in the course of which they offer their services to the public to accept orders and execute commissions for all who may employ them in a certain line of duty, using their own means for the purpose and being accountable only for final performance." Cooley, Torts 1098. See Shearman & Redfield, Negligence §164.

The doctrine of "independent contractor" is peculiar to the law of negligence; and we are not aware that it is appropriate to any other branch of the law.

1. Certainly it has no proper place in the law of workmen's compensation. We will eliminate that term, therefore, from further consideration.

The relation of employer and employe is contractual. It is created in every instance by a contract, express or implied. *Rogers* v. *Rogers* (1919), 70 Ind. App.

2. 659, 122 N. E. 778; *Nissen Transfer, etc., Co.* v. *Miller* (1920), 72 Ind. App. 261, 125 N. E. 652. There is an apparent exception to that statement. To illustrate: Where A hires out his teams, wagons and drivers to B, to do hauling or other work for B, and while doing the work B has the right to control the working place and the drivers, it is commonly said in negligence cases that the drivers are the servants of B while so engaged in his work. But in such cases the relation of master and servant is constructive, not real. It is a fiction resorted to by the courts to enable them with greater ease and facility to apply the law of negligence—especially the rule of *respondeat superior*. In truth the relation of employer and employe continues to exist between A and the team drivers; and under the Workmen's Compensation Act a team driver, receiving

an injury by accident while doing B's work, must look to A alone for compensation. The fiction utilized in the law of negligence has no place in the administration of the Workmen's Compensation Act. *Rogers* v. *Rogers, supra; Rongo* v. *R. Waddington & Sons* (1915), 87 N. J. Law 395, 94 Atl. 408; *Kirkpatrick* v. *Industrial Acc. Comm.* (1916), 31 Cal. App. 668, 161 Pac. 274.

3. Having in mind the foregoing definitions, how was the Industrial Board to determine whether Duer was an employe or a contractor? The proposition must be regarded as settled that whether Duer was an employe of the hoop company at the time he received the fatal injury, was a question of fact for the Industrial Board, to be determined from the evidence. *Columbia School Supply Co.* v. *Lewis* (1916), 63 Ind. App. 386, 115 N. E. 103, Id. (1917), 65 Ind. App. 339, 116 N. E. 1; *Zeitlow* v. *Smock* (1917), 65 Ind. App. 643, 117 N. E. 665; *Sugar Valley Coal Co.* v. *Drake* (1917), 66 Ind. App. 152, 117 N. E. 937; *Mobley* v. *J. S. Rogers Co.* (1918), 68 Ind. App. 308, 119 N. E. 477; *Muncie Foundry, etc., Co.* v. *Thompson* (1919), 70 Ind. App. 157, 123 N. E. 196; *Nissen Transfer, etc., Co.* v. *Miller, supra; Coppes Bros., etc.* v. *Pontius* (1921), 76 Ind. App. 298, 131 N. E. 845.

4. Since whatever relation existed between the company and Duer was created by their contract, naturally we must look to the contract itself, as disclosed by the evidence, to find that relation. They made an express contract. Now, what do we know about that contract? Merely this: that it was a contract whereby Duer agreed to fell trees and to cut them into logs; and whereby the hoop company agreed to pay him therefor at the rate of $2.50 per thousand. That is all the Industrial Board knew about their contract, and all we know about it. The timber on which Duer was bestowing his labor was the property of the hoop

company; and, for aught that appears from the evidence, it had complete dominion over its own property. All that Duer agreed to give to the hoop company, as the consideration for his pay, was his services; and all that the hoop company expected to receive or could receive from him, as the thing for which it agreed to pay, was his services. The evidence, then, tends fairly to bring the hoop company fully within the legislative definition of "employer," rather than within the specific definition of "contractor." It is a legitimate conclusion, therefore, that Duer was in the service of the hoop company under a contract of hire; that the hoop company was using the services of Duer for pay; and that their contract was a contract of employment which carried with it the obligation to pay compensation. Acts 1915 p. 392, §4, Acts 1919 p. 158, §76, Clause (b), *supra.* Perhaps it should be noted that Duer never held himself out to the public as a contractor in the line of work he was doing for the hoop company. It is clear, therefore, that the board was justified in finding that the hoop company and Duer were within the scope of the compensation plan as ordained by the legislature. It is entirely reasonable to say that at the time of his injury Duer was not engaged in an independent employment—was not following an independent business of his own; but that, on the contrary, he was identified with the working force of the hoop company, and therefore the industry in which he was employed should be liable for compensation.

It should be noted that from the report of the accident, which the hoop company made to the Industrial Board, it appears that the company regarded 5. Duer as its employe and that it understood the contract to be a contract of employment within the scope of the compensation statute. Of course, that admission is not conclusive; but it should be given its

proper weight in determining the effect of the contract. *Hege & Co.* v. *Tompkins* (1919), 69 Ind. App. 273, 121 N. E. 677.

It may be well also to state that this court is committed to the proposition that in construing the legislative definition of "employe" a measure of liberality should be indulged to the end that in doubtful cases an injured workman or his dependents may not be deprived of the benefits of the humane provisions of the compensation plan. *Columbia School Supply Co.* v. *Lewis, supra; In re Duncan* (1920), 73 Ind. App. 270, 127 N. E. 289. Nor should those entrusted with the administration of the compensation law be wholly unmindful of the interest of the public therein.

The opinion in the case of *Zeitlow* v. *Smock, supra,* is hereby disapproved insofar as it may conflict with the opinion in the case at bar.

The award is affirmed.

## DISSENTING OPINION.

ENLOE, J.—I cannot give my assent to the reasoning, nor to the result reached in the majority opinion in this case. In that opinion the terms "contractor" and "independent contractor" are practically shorn of all their meaning. They are limited to *specific contracts* to do *specific work*. The entire matter must be definite and certain. I also think that the law as applied to independent contractors should not be limited merely to the law of negligence, and that it has its proper place in the application of the compensation laws. It should not, as stated in the majority opinion, be eliminated from consideration.

In this case Duer agreed to furnish his own tools and cut the timber according to measurements and dimensions given to him at $2.50 per thousand feet. What these tools were we do not know. The contract did not

specify the tools to be used, and so far as its provisions are concerned Duer was at liberty to use his ax and cross-cut saw—simple tools; or he could, if he chose, use a gasoline engine or other machinery as his power plant by which his saws were operated. This was left to him; over this the so-called employer had no control. They had the right, upon this record, to see and demand that the said timber was cut according to "measurements and dimensions," which they had given Duer. They had no control over methods or means.

In the case of *Kelley's Dependents* v. *Hoosac Lumber Co.* (1921), (Vt.) 113 Atl. 818, the court said: "It was said in *Rheinwald* v. *Builders' Brick, etc., Co.,* 169 App. Div. 425, 153 N. Y. Supp. 598, that common-law decisions involving the liability of a master for injuries received by his servant are not controlling in cases under Compensation Acts, nor as valuable therein as cases under the acts themselves. But this idea was repudiated in *Western Indemnity Co.* v. *Pillsbury,* 172 Cal. 807, 159 Pac. 721, and we think rightly so; for we are satisfied that the learning of the common-law decisions affords the safest guide to a proper interpretation of the statutes. Accordingly, we look to our own cases for the rule to direct us to a correct decision of the question in hand. * * * It is this: If under the contract the party for whom the work is being done may prescribe not only what the result shall be, but also may direct the means and methods by which the other shall do the work, the former is an employer, and the latter an employe. But if the former may specify the result only, and the latter may adopt such means and methods as he chooses to accomplish that result, then the latter is not an employe, but an independent contractor. So the master test is the right to control the work. And it is this right which properly differentiates service from independent employment."

As I view it, the above is an accurate statement of the law, and as such upon proper occasion should be applied in the administration of the Workmen's Compensation Act.

In the principal opinion it is said that: "Whether Duer was an employe of the hoop company at the time he received his fatal injury, was a question of fact for the Industrial Board, to be determined from the evidence." While the above statement is, in a sense, literally true, yet as used in the majority opinion it is certainly misleading. And if it is meant in said opinion to place said fact in the class of all other simple facts, primary and inferential, it is an incorrect statement. The Industrial Board does find the *facts*—the primary facts. It does this from the evidence, which does or tends to directly establish the facts; or, as a matter of reasoning, by drawing inferences from facts directly established, it concludes that certain other facts exist. But in determining whether "B" is an employe, or an independent contractor, reason, unaided by certain rules of law, is powerless. It can reach no conclusion.

The determination of the question as to the status of "B" in such case can only be accomplished by the application thereto of certain well-known rules of law. The law furnishes us the measure, the yard-stick, by which the primary facts are measured and the said status determined. Hence the question is sometimes said to be a mixed question of law and fact; it is also sometimes spoken of as a conclusion of law.

In my opinion, under the facts of this case, Duer was a contractor, and the award should have been set aside.