ROBY, JR. *v.* ZIFFRIN TRUCK LINES, INC. ET AL.;
PERRYMAN ET AL. *v.* ROBY, JR. ET AL.

[No. 18,906. Filed February 24, 1958. Rehearing denied May 1, 1958. Transfer denied June 18, 1958.]

*William I. Marlatt* and *Hulbert & Marlatt,* of Gary, for appellant-appellee, Claude Roby, Jr.

*Fred M. Stults, Jr.,* and *Stults, Gibson & Custer,* of Gary, for appellants-appellees, Robert E. Perryman and Clyde Perryman.

*Glenn D. Peters, G. Edward McHie, Peters, Highland & McHie,* of counsel, of Hammond, and *Barce & Barce,* of counsel, of Kentland, for appellee, Ziffrin Truck Lines, Inc.

CRUMPACKER, J.—This is an action for personal injuries brought by Claude Roby, Jr., against Robert E. Perryman, Clyde Perryman and Ziffrin Truck Lines, Inc., which personal injuries were sustained by said Claude Roby, Jr., as a result of a collision between an automobile in which he was riding as a guest and a semi-trailer truck driven by Robert E. Perryman, owned by Clyde Perryman, and allegedly being operated at the time of the collision for and on behalf of Ziffrin Truck Lines, Inc., in the usual course of its business as a common carrier of freight under a certificate of convenience and necessity issued by the Public Service Commission of Indiana. Said collision occurred on January 2, 1953, on State Road No. 8, about one mile east of the town of LeRoy, Lake County, Indiana. The case was tried to a jury in the Newton Circuit Court and at the close of all the evidence the jury, upon the court's instruction, returned a verdict for Ziffrin Truck Lines, Inc. The jury then proceeded to determine the issues between Roby and the Perrymans and returned a verdict for Roby in the sum of $50,000. The court entered a separate judgment on each of these verdicts and Roby, thinking that Ziffrin should not have been let out of the case, and the Perrymans, feeling that the case was not properly tried as to them, each appealed to this court and filed separate assignments of errors herein. For convenience and in the interest of time these appeals have been consolidated for argument and decision.

The Roby appeal presents but a single proposition: Is there substantial evidence in the record tending to prove that the Perrymans were engaged in the discharge of Ziffrin's business as a common carrier under its specific direction when the accident in controversy occurred? If the record contains such evidence, the court erred in directing a verdict in Ziffrin's favor.

As bearing on this question there is evidence tending to prove the following: The truck in question was owned by Clyde Perryman and at the time of the accident was being driven by his son, Robert E. Perryman. The Perrymans were under oral contract to lease this truck exclusively to Ziffrin but formerly it had been leased on occasions to other common carriers. Each leasing to Ziffrin was under the terms of a written one-way lease agreement commencing with the entering into of such lease and terminating with the delivery of the load hauled. Frequently, however, these trip leases were not executed until after the truck was loaded. The steel division of Ziffrin's Chicago office is on Chicago's south side and it was there that trip leases were usually executed. Robert E. Perryman testified as follows:

Q. Now, Mr. Perryman, when were these trip leases with Ziffrin usually signed? Before you got your load or after you had loaded up?

A. Most of the time afterwards.

Q. What was the procedure? You would load up and then what would you do?

A. Well, usually I would load on the north side of Chicago where I would have to—or I would cross the city before the traffic got heavy early in the morning, then I would stop at the steel division on my way out of town at night or that afternoon.

Q. In other words, you would actually be hauling freight before these trip leases were signed up. Is that correct?

A. That's right.

Ziffrin furnished its leased trucks with signs reading "Trip leased to Ziffrin Truck Lines, Inc.," and each of these signs bore Ziffrin's P.S.C.I. permit numbers. One of these signs was on the Perryman truck at the time of the accident and had been there for several days prior thereto with the knowledge and consent of

Ziffrin. The truck in question had been trip leased to Ziffrin on December 31, 1952, and on that day Robert Perryman had used it to haul a load of freight from Chicago to Indianapolis after which he drove the truck empty to his home near Lee, Indiana. Two days later, on the morning of the accident, he received a telephone call from one Jerry Caesar, dispatcher for Ziffrin, instructing him to go to Chicago and pick up a load of steel to be hauled to Richmond, Indiana. He was on a direct route to pick up that load when the accident in controversy happened and there was no trip lease between the parties then in effect.

In *Ropos* v. *Long* (1957), 147 F. Supp. 698, the United States District Court for the Western District of Pennsylvania, had the following question under consideration:

> "Is a franchise holder liable for acts of negligence where a vehicle involved in an accident is not owned or operated by the franchise holder, but is proceeding to the point of origin of the haul at the order and direction of the franchise holder?"

That is substantially our present question and the court answered it thus:

> "To permit a franchise holder to escape liability while a motor vehicle is being operated to a point where the vehicle is to be loaded with the cargo, authorized for transportation by said franchise holder, militates against public policy and contrary to the purport for which franchises are issued in connection with an activity involving unreasonable risk of harm to others.

> "I conclude that a trip en route to pick up a cargo by a third person, authorized, ordered and directed by a franchise holder as an interstate motor carrier, is so inextricably tied up with the shipment, as an incident and a part thereof, as to create liability on the part of the franchise holder if the operator of the vehicle so operated commits an act of negligence which is the proximate cause of the accident."

The court's reasoning in the above decision is certainly applicable to the facts in the case at bar. It appeals to us and we therefore hold that Roby's case against Ziffrin should have been submitted to the jury and the court therefore erred in directing a verdict for Ziffrin.

The Perrymans' appeal predicates error in the giving of three instructions and the court's refusal to give one. The first of those given reads as follows:

"At the time of the collision herein involved, there was a statute of Indiana which provided as follows, to-wit:

'Drivers of vehicles proceeding in opposite directions shall pass each other to the right and upon roadways having width for not more than one line of traffic in each direction, each driver shall give to the other at least one-half of the main traveled portion of the roadway as possible.'

"The violation of this statute would be prima facie evidence of negligence."

The objection to the above instruction is to the effect that there is no evidence to which it is applicable. The undisputed evidence indicates that the Perryman truck was traveling west on State Road 8 and the automobile in which Roby was riding was going east on the same highway. The Perryman's truck overtook a westbound farmer's tractor and in attempting to pass it was suddenly confronted with the Roby automobile and, in an attempt to avoid it, took to the ditch on the south side of the road. The driver of the Roby automobile simultaneously did the same thing and the collision occurred in said ditch. Perryman's argument seems to be that in taking to the ditch on the south side of the road he gave the Roby car the whole right half of the highway and therefore the instruction was inapplicable to the facts. The Perrymans, however, lose sight of the fact that it was the momentary pres-

ence of their truck in the eastbound traffic lane that caused the accident. A head-on collision was imminent and both vehicles took to the ditch. The instruction is not mandatory in character and it was not directed at the Perrymans any more than it was directed at the driver of the Roby automobile. It quotes a statute applicable to all drivers of motor vehicles upon public highways in Indiana and we see no error in its giving.

The Perrymans next charge error in the giving of the following instruction:

> "At the time of the collision herein involved there was a statute of Indiana which provided in part, as follows, to-wit:
> 'No vehicle shall at any time be driven to the left side of the roadway under the following conditions:
> 1) When approaching the crest of a grade or upon a curve in the highway where the driver's view is obstructed within such distance as to create a hazard in the event another vehicle might approach from the opposite direction.'
> "The violation of this statute would be prima facie evidence of negligence."

Here also the objection is that the instruction is not applicable to the evidence. Robert E. Perryman testified that there was a hill crest near the place where the collision occurred. He was approximately on top of this hill crest when he started around the farm tractor and that the point of impact was about 50 to 75 feet west of the hill crest. There was also evidence that this hill crest was sufficient to obstruct the view of drivers approaching it from opposite directions. Robert Perryman said that when he overtook the farm tractor he slowed down because it was too far over the hill crest to enable him to see what was coming. Benny Horton, driver of the Roby car, testified that just before he got up to where the collision happened he saw a farm tractor come over the hill going west and that he first saw the Perryman truck when it was

a block or so away from him. He lost sight of it for a few minutes and then saw it again. That the reason he didn't see it momentarily was because of the hill crest. He went down in the dip and couldn't see it and then saw it again "when I was just beginning to see the top of it coming there." He also testified that when he first saw the Perryman truck it was a block or more away from him and the second time he saw it he was just beginning to go up to the crest of the hill and then he began to see the top of the truck coming over the hill.

We think the foregoing is ample evidence to justify the instruction. It states the statutory law of the road and was properly given. The third instruction given of which the Perrymans complained is as follows:

> "One who operates a motor vehicle upon a public highway is required to maintain a reasonable lookout for other traffic on the highway. He is ■ bound to see what he could have seen if he had exercised due care under the circumstances. The failure to maintain such a reasonable lookout would constitute negligence."

Here, also, the objection is that the instruction is not applicable to the evidence. It is undisputed that at the time of this collision the Perryman truck was on their left side of the highway and that Robert E. Perryman had driven the truck upon his left side of the highway in an attempt to overtake a farm tractor. The automobile in which Roby was riding was approaching from the opposite direction. Perryman testified several times that he first saw the Roby automobile when it was between a quarter and a half mile away and that the next time he saw it it was between 75 and 100 feet away. He also testified that he did not realize that there was any danger of a collision until the Roby automobile was 75 to 100 feet away. In other

words, Perryman did not see or observe the oncoming car in which the appellee was riding from the time it was a quarter of a mile or more away from him until it was 100 feet or less away, and this notwithstanding the fact that he was on his left side of the road attempting to overtake another vehicle and was in a position where a headon collision was imminent if both his truck and the oncoming vehicle proceeded straight ahead. The collision occurred out in the open country where automobiles are permitted to travel 65 miles per hour and where he should have anticipated that approaching vehicles might be traveling at a fairly high rate of speed. From all the evidence, and particularly on the basis of Robert E. Perryman's own testimony, the jury could have drawn an inference that he failed to maintain a reasonable lookout ahead or he would have seen the oncoming car and would have realized the danger of a collision while it was a safe distance from him. We find no fault in the instruction.

Finally, the Perrymans complain of the court's refusal to give the following instructions tendered by them:

"If you find from a fair preponderance of the relevant evidence that the plaintiff knew or should have known when he rode in the automobile in question that the driver thereof was under the influence of intoxicating liquor, and if you should further find from a fair preponderance of the relevant evidence, that the operation of said automobile, by the driver thereof, while under the influence of intoxicating liquor, proximately caused, or proximately contributed to cause the accident in question and plaintiff's resulting injury, you are instructed that the plaintiff incurred or assumed the risk of danger resulting from such operation, then your verdict should be for the defendants."

This instruction is clearly bad. It is mandatory and assumes that the driver of the automobile in which

Roby was riding at the time of the accident was under the influence of intoxicating liquor. It obviously invades the province of the jury and was properly refused.

The judgment against Roby and in favor of Ziffrin Truck Lines, Inc., is reversed with instructions to grant the appellant Roby's motion for a new trial of his case against Ziffrin Motor Truck Lines, Inc. The judgment for Roby against the Perrymans is hereby affirmed.

NOTE.—Reported in 148 N. E. 2d 215.