VIRA WILSON, ADMINISTRATRIX OF THE ESTATE OF ROBERT L. WILSON, DECEASED *v.* BETTY R. KAUFFMAN, MELVIN KAUFFMAN, AND THE SOUTH BEND TRIBUNE.

[No. 3-1072 A 74. Filed May 24, 1973.]

*Edgar A. Grimm, Grimm & Grimm,* of Auburn, *H. E. Petersen,* of LaGrange, for appellant.

*Milford M. Miller, Edward L. Murphy, Jr., Livingston, Dildine, Haynie, & Yoder,* of counsel, of Fort Wayne, for appellees.

SHARP, J.—This is a summary judgment case. The complaint for wrongful death was filed by the Appellant naming the Appellees, Betty R. Kauffman, Melvin Kauffman and The South Bend Tribune, as defendants. This case arose from a collision on November 9, 1970 of a vehicle operated by the Appellant's decedent and a pickup truck operated by the Appellee, Betty R. Kauffman. As a result of injuries sustained in said collision the Appellant's decedent died on November 19, 1970. The complaint charges Betty R. Kauffman with negligent acts and alleges that at the time of the collision

she was acting as an agent or servant of the Appellee, The South Bend Tribune. The Tribune moved for summary judgment on that issue which was granted by the trial court for the reason "that neither Betty R. Kauffman nor Melvin Kauffman was an employee of The South Bend Tribune. That Melvin Kauffman was an independent contractor. That the South Bend Tribune is not responsible for any alleged negligent acts of Betty R. Kauffman or Melvin Kauffman."

The propriety of granting summary judgment for the Tribune is the sole question which has been duly and properly preserved for our consideration on this appeal.

When considering the Tribune's motion for summary judgment the trial court had before it the pleadings, the depositions of both Kauffmans, the deposition of Roy S. Henderson, Circulation Manager of the Tribune, plus the affidavits of Roy S. Henderson, and also of Edgar A. Grimm and Milford M. Miller. As always in a summary judgment case, the above described pleadings, depositions and affidavits must be construed in the light most favorable to the party against whom summary judgment is requested, and in this case that party is the Appellant.

In 1959 Melvin Kauffman entered into a written contract with the Tribune with reference to the delivery of the latter's newspapers in an area included in a 50 mile radius of South Bend, Indiana. The precise terms of said contract were:

"MEMORANDUM OF ARGREEMENT [sic] made this 13th day of May 1959, between South Bend Tribune, a corporation, referred to hereinafter as the 'Publisher,' and Melvin D. Kauffman, referred to hereinafter as the 'Contractor,' Witnesseth, that for and in consideration of the mutual promises herein contained the parties hereto agree as follows:

1. The Contractor agrees to deliver, beginning May 17, 1959, newspapers published by the Publisher from its place of business in South Bend, Indiana, to such persons and at such places and along such route or routes and on such regular schedule or schedules as may from time to time be designated and furnished to him by the Publisher; the time

of, and the routes and schedules for, said delivery, and the strict adherence thereto, being the essence of this contract. Until change is made in schedule by the Publisher, delivery of said newspapers shall be completed as early as practical after they are received from Publisher.

2. The Contractor agrees to make such delivery at his own expense and according to his own means and method of conveyance which shall belong to and be in the exclusive charge and control of the Contractor, and which shall not be subject to the control or supervision by the Publisher, except as to the results of said work.

3. The Contractor agrees not to deliver publications other than those of the Publisher while he is performing the work required of him hereunder, without the written consent of the Publisher first had and obtained.

4. The Contractor agrees to hold the Publisher free and harmless from all claims and demands which may arise from or grow out of the work to be performed hereunder by him.

5. The Publisher agrees to pay the Contractor $110.98 weekly.

6. This agreement may be terminated by either party at any time without notice."

Since 1959 Kauffman has been paid for the delivery of said newspapers by the Tribune on a mileage basis and not on the basis set forth in paragraph 5 of the contract, *supra*. Kauffman owned the vehicle used for such deliveries at all times including on the day of the collision here. Kauffman was paid for the delivery of newspapers for 365 days per year but the paper is only published 361 days per year. The Tribune knew that Betty R. Kauffman generally drove the route and delivered the newspapers. The Tribune has 21 such delivery districts in which bulk newspapers are delivered by the Tribune. These 21 districts are established on the basis of the number of accounts involved in each and the ability of a carrier to actually handle the deliveries in the particular geographical district. The Tribune regularly gives Kauffman a manifest telling him where to deliver newspapers and the Tribune sustains any loss on bulk newspapers so handled. As an incident of this relationship with the Tribune the Kauffmans were furnished a group insurance policy on which the

Tribune paid a substantial portion of the premium. The Tribune determined the type of vehicle and equipment that any potential carrier or deliverer was required to use and also determined whether the equipment actually used by such carrier was satisfactory for the purpose of delivering newspapers. At the time here in question the Kauffmans were supervised by Henderson as Circulation Manager and by Jerry Vagg as Country Circulation Manager, the latter working directly under Henderson. The route traveled on the date here in question had been predetermined and laid out by the Tribune acting through its circulation department. On various occasions the General Circulation Manager and the Country Circulation Manager rode over the routes with the carriers, including the Kauffmans. This particular route is approximately 160 miles long. The Tribune has never consented for the Kauffmans or any other carrier working for the Tribune to deliver any publication other than the Tribune's newspaper and probably would not grant such permission even if requested. If the Kauffmans chose to drive a route differing from the one laid out by the Tribune they would still be compensated on the basis of the mileage on the route as laid out and predetermined by the Tribune. The Kauffmans are currently paid at the rate of 16¢ per mile and received bonuses plus some group insurance benefits. This mileage rate has been increased since 1959. The Tribune has had occasions to discipline some of the carriers by calling them in but has never had to take such action as to the Kauffmans. On occasion the carriers are paid extra compensation for delays at the Tribune plant which are not caused by the carriers. All of the stops on the route are predetermined by the Tribune. This collision occurred on the designated route at a time when Betty R. Kauffman was making deliveries of the newspaper. The road at the point of the collision is weavy with dips and various other defects. It is the shortest route between two designated delivery points. The Circulation Manager also stated that the carriers were also paid extra compensation

on the basis of the number of pages in a given issue of the newspaper.

Against this factual background we must determine whether there was a genuine issue as to a material fact with reference to respondeat superior. Or, we must determine if the Tribune is entitled to judgment as a matter of law on that issue so as to take the Tribune out of this lawsuit.

We should also emphasize that we are here concerned with more than the simple provisions and construction of the 1959 contract. We also have here factual detail as to the precise nature of the relationship between Kauffmans and the Tribune over an extended period of time up to the date of the collision which caused Appellant's decedent's death. These factual details of this relationship go beyond the original contractual description of the job of delivering newspapers and represent a relevant course of conduct between the Tribune and the Kauffmans for consideration by the trier of fact. The Appellee has attempted to isolate and dissect the various elements of this relationship and thereby suggest that no permissible inference could be drawn to etablish that Kauffmans were employees or servants of the Tribune. The trier of fact is entitled to consider the totality of the circumstances of this relationship to determine whether, in fact, the Kauffmans were acting as agents, servants or employees of the Tribune at the time of this collision. It may be that the trier of fact will reject the Appellant's contentions upon consideration. Whatever the decision is by the trier of fact, it is one which must be submitted to it. See *Jones* v. *Bergman* (1938), 105 Ind. App. 429, 15 N.E.2d 740.

Given the inferences most favorable to the Appellant here, the facts do not inescapably lead to the conclusion that the Kauffmans were independent contractors. Recently this court was confronted with a similar issue in *Watson* v. *Tempco Transportation, Inc.* (1972), 151 Ind. App. 644, 281 N.E.2d 131, in which a summary judgment had been granted in

the trial court. Judge Robertson, speaking for this court, reversed stating:

> "It is manifestly clear from the foregoing evidence and the arguments of the respective parties that there existed a good faith disagreement as to the inferences to be drawn from the evidence. Accordingly, it is our opinion that the conflict as to the inferences to be drawn from the facts of this case could only properly be resolved by the jury, and thus it was reversible error for the Trial Court to sustain Tempco's motion for summary judgment."

It is well established in Indiana that generally the question of whether one is acting within the scope of employment is a question of fact for the jury. See *Sargent Paint Co. v. Petrovitzky* (1919), 71 Ind. App. 353, 124 N.E. 881. See also, *Standard Oil Co. v. Thomas* (1938), 105 Ind. App. 610, 13 N.E.2d 336. The Appellate Court held that it was reversible error to take such question from the jury by directed verdict in a case involving the operation of a semi-trailer truck used in a motor carrier's business when enroute, at the carrier's direction, from the driver's home to pick up a load of steel. *Roby v. Ziffrin* (1958), 128 Ind. App. 578, 148 N.E.2d 215.

In *Dispatch Pub. Co. v. Schwenk* (1941), 109 Ind. App. 223, 34 N.E.2d 150, the Appellate Court had before it a factually similar case. At 34 N.E.2d 151 the court said:

> "The trial court had before it the witnesses and heard all of the evidence on the question of whether or not the appellee Westphal was the agent or servant of the appellant. The evidence here was evidently far more complete on the relationship of the parties than in the Brechbiel case supra. While it is true that the evidence contains some elements that might point toward the status of independent distributor of Westphal yet it also contained other elements that would point toward the status of agent or employee. Without attempting to summarize the evidence completely we call attention to the fact that the appellant alone established the route for Westphal and he had nothing to do with the laying out of the route. The circulation manager of the appellant rode along with him and the other carriers at somewhat regular intervals. Westphal could not obtain

subscriptions outside of his territory for himself; men other than Westphal came out to see the appellee Schwenk in regard to buying the paper at the time the route was organized and they gave him a mail box with the word 'Dispatch' on it; Westphal could carry no other papers except such as were allowed by the appellant and these he had to buy from the appellant. Every three months Westphal was required to turn in to the appellant his list of subscribers; in July, 1938, Westphal and two other carriers went on a strike and refused to go out on the route. He had to be down to the appellant's office at press time or be 'hollered at'; he was required to conform to prices fixed by the appellant and there was evidence from which it could reasonably be concluded that Westphal had no property interest in the route or the subscription lists but that on the contrary that the appellant did. We think that there was at least some competent evidence from which the jury could properly conclude as it did conclude that the relationship of master and servant or principal and agent was shown by the evidence. The verdict of the jury was sustained by sufficient evidence and we find no reason to hold that it was contrary to law."

For similar results under similar circumstances see *Bates Motor Transport Lines* v. *Mayer* (1938), 213 Ind. 664, 14 N.E.2d 91; *Universal Carloading and Distributing Co.* v. *McCall* (1940), 107 Ind. App. 479, 25 N.E.2d 253; *Gas City Transfer Co.* v. *Miller* (1939), 107 Ind. App. 210, 21 N.E.2d 428; and *Gibbs* v. *Miller* (1972), 152 Ind. App. 326, 283 N.E.2d 592.

As a general rule the interpretation, construction or legal effect of a contract is a question to be determined by the court as a matter of law. *U.S.F.&G.* v. *Baugh* (1970), 146 Ind. App. 583, 257 N.E.2d 699. However, another equally well accepted rule is that the construction of a contract is for the jury where the terms of a contract are ambiguous and their meaning is to be determined by extrinsic evidence. *Brumfield* v. *State ex rel. Wallace* (1934), 206 Ind. 647, 190 N.E. 863; *Modern Woodmen of America* v. *Hall* (1921), 190 Ind. 493, 130 N.E. 849; *Reissner* v. *Oxley* (1881), 80 Ind. 580. Where a written contract is unambiguous the trial court should construe it and inform the jury as to its meaning. However, if it is ambiguous the particular ambiguity

should be selected and submitted to the jury under proper instructions. *Vulcan Iron Works Co.* v. *Electro Magnetic Gold Mining Co.* (1912), 54 Ind. App. 28, 99 N.E. 429, reh. den., 54 Ind. App. 28, 100 N.E. 307. Also, when extraneous facts and circumstances are necessary to explain an ambiguous or uncertain contract the question of construction is one of mixed law and fact. *Mobley* v. *J. S. Rogers Co.* (1918), 68 Ind. App. 308, 119 N.E. 477. Strictly speaking the interpretation of the contract is not submitted to the jury insofar as the question is one of construction and a question of law, but, the facts on which that construction rests must be determined by the jury. *Portland Body Works* v. *McCullough Motor Supply Co.* (1918), 72 Ind. App. 216, 119 N.E. 180. The construction of an ambiguous contract is a question of law where the ambiguity arises by reason of the language used and not because of extrinsic facts. *Prather* v. *Ross* (1861), 17 Ind. 495. Whether a particular contract is executed or executory is generally a question of fact depending on the parties' intention gathered from the terms and stipulations. *Branigan* v. *Hendricks* (1897), 17 Ind. App. 198, 46 N.E. 560. The above authorities are well summarized in West's Indiana Law Enc., Vol. 6, *Contracts*, Section 137.

Here, the status of Betty R. Kauffman at the time of the collision in relation to The South Bend Tribune must be determined. The factual and legal basis of that relationship is found in the 1959 written contract and the conduct of the parties since 1959. The objective conduct of the parties since 1959 may be relevant for two reasons. First, as extrinsic evidence to interpret the 1959 contract. Second, as evidence that the conduct of the parties went beyond that contemplated by the 1959 contract and, in effect, modified its terms. In this regard there is no doubt that its terms as to payment were modified. Under the above authorities the jury has a role to play as finder of fact and the question is not one purely of law for the trial court alone. At the very least the trial court will be obligated to submit questions to the jury under the authoriy

of the *Vulcan Iron Works* case. We cannot determine as a matter of law that said contract was clear and unambiguous and subject only to the interpretation placed on it by the trial court.

One of the factual inferences that was permissible under the record in *Tempco* was that the driver was acting under the direction, control and for the benefit of *Tempco*. *Tempco* is a case of recent Indiana vintage dealing with important substantive law and summary judgment law aspects of this case. The Appellant's brief cites *Tempco* and places primary reliance on it together with *Wozniczka* v. *McKean* (1969), 144 Ind. App. 471, 247 N.E.2d 215. Since *Tempco* is sufficient Indiana authority to properly decide this case, we do not deem it necessary to rely on or distinguish the authorities from other jurisdictions submitted to us by counsel in their briefs. It should also be emphasized that in *Tempco* the determination of whether the truck driver at the time of the collision was an employee turned, at least in part, on the provisions of a written lease. On this subject District One of this court added at 281 N.E.2d at page 134:

"Indiana is in accord with the 6th Circuit's opinion that the question of acting within the scope of employment is a question of fact for the jury. Standard Oil Co. of Ind. v. Thomas (1938), 105 Ind. App. 610, 13 N.E.2d 336; Sargent Paint Co. v. Petrovitzky (1919), 71 Ind. App. 353, 124 N.E. 881. In Roby v. Ziffrin, etc.; Perryman v. Roby (1958), 128 Ind. App. 578, 148 N.E.2d 215, this Court held that it was reversible error to take the case from the jury when a question was raised as to whether a semi-trailer truck was being used in the defendant motor carrier's business when enroute, at the defendant's direction, from the driver's home to pick up a load of steel.

It is nonetheless true that a defendant who is charged vicariously with liability under the doctrine of respondeat superior may be entitled to judgment as a matter of law where the facts are undisputed and there is no evidence in support of the conclusion that a master-servant relationship existed. Such was the case in Pace v. Southern Express Company, supra, and Pace v. Couture (1971), [150] Ind. App. [220], 276 N.E.2d 213. However, in the instant case, while the basic facts do not appear to be in dispute, there

nonetheless is genuine disagreement between the parties as to the inferences to be drawn from those facts. It is well settled in the federal courts that where there exists a good faith disagreement as to the inferences to be drawn from the facts summary judgment is not proper. Hart v. Johnston (6th Cir. 1968), 389 F. 2d 239; Massengale v. Transitron Electronic Corp. (1st Cir. 1967), 385 F. 2d 83; Williams v. Pacific Maritime Association (9th Cir. 1967), 384 F. 2d 935; Moran v. Bench (1st Cir. 1965), 353 F. 2d 193."

*Thus,* it would appear that *Tempco* is similar to this case on both an evidentiary and procedural basis.

The granting of a summary judgment in favor of The South Bend Tribune must be and hereby is reversed and this case is hereby remanded for a determination on its merits.

Reversed and remanded.

Hoffman, C.J., concurs; Staton, J., concurs in result.

NOTE.—Reported at 296 N.E.2d 432.