CLYDE E. WILLIAMS AND ASSOCIATES, INC. *v.* RUDY BOATMAN, ADMINISTRATRIX OF THE ESTATE OF RALPH BOATMAN, DECEASED

[No. 1-477A71. Filed May 18, 1978. Rehearing denied July 24, 1978. Transfer denied April 4, 1979.]

*Rosenfeld, Wolfe, Frey & Lowery, Eric A. Frey*, of Terre Haute, for appellant.

*Buena Chaney, Mann, Chaney, Johnson, Hicks & Goodwin*, of Terre Haute, for appellee.

LYBROOK, P.J. — Clyde E. Williams and Associates, Inc., defendant-appellant, brings this appeal following the entry of judgment in favor of Ruby Boatman, Administratrix of the Estate of Ralph Boatman, Deceased, plaintiff-appellee. The trial to a jury had resulted in a verdict of $120,000 in favor of Boatman.

The facts most relevant to this appeal indicate that Williams is an engineering concern which was under contract with the Town of Rockville for the supervision of the installation of a sewer system in that town. The contract required Williams to prepare the specifications and design the sewer system, and further required Williams to inspect the construction to assure the town that the specifications were being followed. The actual construction was being performed by the Howard E. Schmidt Company, which had also entered into a contract with the Town of Rockville.

Ralph Boatman was an employee of Schmidt and was engaged in the laying of sewer pipe in the bottom of a ditch when the walls of that ditch collapsed. As a result of that collapse, Ralph Boatman was killed. Following the accident, suit was filed against Williams which resulted in the above mentioned verdict and judgment.

Williams presents the following issues for our review:

(1) Did the trial court commit reversible error when it overruled Williams' Motions for Directed Verdict, both at the end of the plaintiff's evidence and when renewed at the close of all the evidence? The Motions were based on the following theories:

(a) Williams owed no duty of care to Boatman.

(b) Boatman was contributorily negligent as a matter of law.

(c) Boatman incurred or assumed the risk of his injury as a matter of law.

(d) No act of negligence by Williams was the proximate cause of the injury.

(2) Were any of the eight contested instructions to the jury sufficient error to necessitate reversal?

Prior to any discussion of the merits of this appeal, we deem it necessary to briefly address a procedural issue which has arisen subsequent to trial. Williams timely filed its Motion to Correct Errors, praecipe, transcript and appellant's brief. Upon the completion of these filings, and during the time period allowed for an answer brief to be filed by the appellee, Boatman filed a Motion to Dismiss or Affirm the Judgment. In conjunction with that motion Boatman filed a Motion for Extension of Time in which to file her answer brief. She requested a thirty-day extension and requested that period not commence to run until her Motion to Dismiss or Affirm had been granted or denied by this court. The Motion for Extension of Time was granted.

Boatman's Motion to Dismiss and brief in support thereof asserted numerous alleged errors of a technical nature in Williams' praecipe and the manner in which the transcript was prepared and presented to this court.

While the preparation of the three volume transcript is by no means a model of appellate procedure, its defects were not so substantial as to necessitate a dismissal of the appeal. This is especially so in light of the increased preference of the courts to reach a resolution of cases based on their merits and not on procedural technicalities. *Central Ind. Railway Co. v. Mikesell* (1965), 139 Ind. App. 478, 211 N.E.2d 794; *Costanzi v. Ryan* (1977), 175 Ind. App. 257, 368 N.E.2d 12.

Following the overruling of her Motion to Dismiss, Boatman timely filed her answer brief in which she laboriously detailed the same alleged technical inadequacies which had been asserted in her Motion to Dismiss. It is the law in this state that the filing of a Motion for Extension of Time in which to file an answer brief waives any procedural error in the preparation of the transcript or briefs. Ind. Rules of Procedure, Appellate Rule 14(B); *Leuck v. Goetz* (1972), 151 Ind. App. 528, 280 N.E.2d 847; *Bland v. Phillips* (1966), 138 Ind. App. 214, 213 N.E.2d 339; *Terry v. Terry* (1973), 158 Ind. App. 218, 301 N.E.2d 853. As a requirement for the granting of a Motion for Extension of Time in which to file an answer brief the appellee must, as

did Boatman, file a verified petition stating that the brief will be on the merits and that all Motions to Dismiss and other dilatory motions have been filed. It is well settled that the appellee may not contravene her affidavit and assert technical errors following the granting of an extention of time in which to respond. *Leuck, supra.* We find this rule particularly appropriate when a Motion to Dismiss and briefs in support thereof have been filed. By reasserting those matters in her answer brief Boatman attempts to present twice the identical issues for our review. The overruling of her Motion to Dismiss stands, and she has waived those issues for presentation in her answer brief.

## I.

The first issue which we must consider concerns the determination of the existence of a duty on the part of Williams in favor of Boatman. The question of duty is presented to this court in two separate but closely related issues:    namely, Williams asserts that as a matter of law it owed no duty to Boatman, and secondly that the existence of a duty is purely a question of law to be decided by the court and that reversible error was committed when the jury was instructed to determine if a duty existed. The interrelationship of these two issues in this particular case allows us to discuss the two alleged errors simultaneously.

It is generally stated that the existence of a duty is purely a question of law to be decided by the court. A more precise statement of the law may be found in the case of *Walters v. Kellam and Foley* (1977), 172 Ind. App. 207, 360 N.E.2d 199, where it is stated:

"The initial question as to all defendants is whether a duty was owed to Walters by each defendant. It is for the court to determine if a legal relationship exists from which a duty of care arises. *Miller v. Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701; *Union Traction Co. v. Berry* (1919), 188 Ind. 514, 520, 121 N.E. 655, 124 N.E. 737. If a duty exists as a matter of law, it is generally within the province of the jury to determine whether, under the precise facts of the case, the defendant's conduct measured up to the legal standard of care required by the relationship.

The Indiana Supreme Court in *Miller v. Griesel, supra,* clarified what questions of law the trial court is obligated to decide before a common law negligence case may by submitted to the jury:

'The first is whether the law recognizes any obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff.

"The duty to exercise care for the safety of another arises as a matter of law out of some relation existing between the parties, and it is the province of the court to determine whether such a relation gives rise to such duty." ' *Neal v. Home Builders, supra.* [(1953), 232 Ind. 160, 111 N.E.2d 280]. . . ."

While it is clear that the trial court must determine if an existing relationship gives rise to a duty, it must also be noted that a factual question may be interwoven with the determination of the existence of a relationship, thus making the ultimate existence of a duty a mixed question of law and fact. This dichotomy presents a trial court with a difficult problem in the drafting of instructions.

In the case at bar the trial court gave its instruction number 4, which in essence told the jury to consider whether the defendant had a duty to compel compliance with safety regulations, and if the defendant did have such a duty, whether that duty had been breached. The jury was given no guidance or direction to follow in making its decision as to duty. This was reversible error.

The facts in the present case reveal two possible relationships which could impose a duty of care upon Williams extending to Boatman. Initially, Williams *may* have assumed the supervision of safety at the construction site and thus a relationship would exist which would create a duty to supervise the project in the manner of a reasonably prudent man. *Walters, supra.* It is clear that it is a fact question as to whether or not Williams assumed control of the site. The jury should have been instructed that they were to consider the evidence and determine if it preponderated in favor of Boatman as to Williams' assumption of control. The instruction should then have, as a matter of law, either established or denied a duty based on the factual determination by the jury. For example, it would be proper to instruct the jury alternatively that if it should find a certain set of facts, then a duty exists; however, should the jury reach a different factual conclusion, then no duty would exist. This procedure may be closely analogized to the case in which the status of the parties will determine

the duty owed between the parties, i.e., licensee, invitee, trespasser, etc. See generally *Standard Oil Company of Indiana, Inc. v. Scoville* (1961), 132 Ind. App. 521, 175 N.E.2d 711.

The second possible source of a relationship which would impose a duty on Williams was the contract between Williams and the Town of Rockville. It is clear that the law in Indiana would allow a contract to impose a duty in favor of Boatman. *Walters, supra.* Prior to the disposition of the case at bar we feel it appropriate to repeat some of the general rules of contract interpretation. Initially, the construction of a contract is generally a matter for the court and not for the jury. *Ebert v. Grain Dealers Mutual Ins. Co.* (1973), 158 Ind. App. 379, 303 N.E.2d 693. Secondly, It must be remembered that construction of ambiguous contracts is a matter for the jury where the terms of the contract are ambiguous and extrinsic evidence must be used to determine their meaning. *Wilson v. Kauffman* (1973), 156 Ind. App. 307, 296 N.E.2d 432. However, if the ambiguity arises due to the language of the contract and not because of extrinsic facts then its construction is purely a question of law for the court. *Wilson, supra.* Judge Sharp, in the *Wilson* opinion, also stated that contract interpretation is a mixed question of law and fact when extraneous facts and circumstances are necessary to explain the ambiguity. And finally, when a particular ambiguity exists, it must be submitted to the jury under proper instructions. *Wilson, supra.*

The trial court's instruction to the jury on the question of duty did not specifically mention the contract and thus may be interpreted in two ways. First, by implication, we could interpret its action to mean that it had found no ambiguity, had held the contract to create no duty, and thus did not submit the matter to the jury. In the alternative, its action could be interpreted to mean that the trial court had found an ambiguity requiring the use of extrinsic and extraneous evidence to attach the proper construction to the contract and was thus allowing the jury to consider the evidence in the case bearing on the interpretation of the contract.

Under either implication the trial court committed reversible error by failing to properly instruct the jury on the role it was to play in the contract construction and the resultant imposition of a duty to supervise the safety at the construction site.

Having provided the above basic guidelines to be employed by the trial court, we hereby reverse and remand this cause for a new trial, on the merits, in accordance with this opinion.

Reversed.

Lowdermilk and Robertson, JJ., concur.

NOTE—Reported at 375 N.E.2d 1138.